fore, it simply cannot be deemed an abuse of discretion.

■ One further matters requires attention. Robson argued that the bankruptcy court's order enjoining him from further involvement in the Hadar adversary proceedings precluded him from appearing before the *district* court regarding those proceedings. Therefore, Robson urged, the bankruptcy court exceeded its authority in this respect. However, Robson admitted during oral argument that he had not filed a *pro hac vice* application with the district court in an effort to receive permission to appear in the Hadar appeal, and did not, in fact, know whether such an application would have been granted. Thus, this court is of the opinion that it was Robson's own action in failing to apply to the district court, rather than the bankruptcy court's order, that prevented him from appearing before the district court in the Hadar appeal.

In view of the foregoing, the decision is affirmed.

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Herbert Collins BEVERLY, Defendant-Appellant.**

**No. 83–1862.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 19, 1984.

Decided Dec. 3, 1984.

Bailey Brown, Senior Circuit Judge, concurred in the results only.

Rudy M. Howard, Sr. (argued), Bay City, Mich., for defendant-appellant.

Michael Hluchaniuk, Asst. U.S. Atty., Bay City, Mich., Robert D. Martinez—Asst. U.S. Atty., (argued) Leonard R. Gilman, U.S. Atty., Detroit, Mich., for plaintiff-appellee.

Before JONES, Circuit Judge; and PECK and BROWN, Senior Circuit Judges.

PER CURIAM.[1]

This case is before the Court upon appellant's appeal from the district court's order that denied his Motion for Judgment of Acquittal. Upon consideration of the issue presented by this appeal, we reverse.

On November 19, 1982 police officer Michael Ellicott, pursuant to a warrant, executed a search of Henry Hatfield's residence. While searching the kitchen, Ellicott found appellant, Herbert Collins Bev-erly, and Clinton Austin, and told them to turn around and place their hands on the wall. After both Beverly and Austin complied, Ellicott patted them down.

During the pat down Ellicott noticed that a waste basket between Beverly's and Austin's feet contained two objects: (1) an unzipped purse, which revealed the butt of a handgun; and, (2) another handgun, which was underneath the unzipped purse. As a result, Ellicott moved the basket to the other side of the kitchen, outside of Beverly's and Austin's immediate area and later seized the guns.

Subsequently, the guns were examined by Charles Wood of the Michigan State Police Crime Laboratory. Wood discovered that one of the guns contained one identifiable, latent fingerprint. At trial for a violation of 18 U.S.C. § 922(h)(1) (1982) both Wood and Ellicott testified during the government's case-in-chief. The statute prohibits the receipt by a convicted felon of a weapon that has been shipped in interstate commerce. At the close of the government's case-in-chief, Beverly moved for a Judgment of Acquittal under Rule 29 of the Federal Rules of Criminal Procedure.

In support of his motion Beverly argued that "the statute involved does not prohibit mere touching, and there could be many, many legitimate reasons why or how the fingerprint got on the weapon." The trial court, however, denied his motion. Subsequently, the jury returned a verdict of guilty. Beverly, therefore, was convicted of violating Section 922.

On appeal Beverly raises the same contention that he raised at trial. The evidence clearly demonstrated that he must have "touched" the gun at some point. The evidence does not clearly demonstrate that he "received" the gun within the meaning of Section 922. Of course, the government contends the contrary. As a result, only one issue is presented for appeal—whether the trial judge erred in denying Beverly's motion for acquittal under

---

**1.** Honorable Bailey Brown concurs in the result only.

Rule 29 because the government proved only that Beverly "touched" the gun rather than "received" the gun within the meaning of Section 922.

In reviewing the district court's denial of Beverly's motion for an acquittal, this Court "must view the evidence and all reasonable inferences in the light most favorable to the government." *United States v. Gibson,* 675 F.2d 825, 829 (6th Cir.), *cert. denied,* 459 U.S. 972, 103 S.Ct. 305, 74 L.Ed.2d 285 (1982). "If the evidence is such that a reasonable mind might fairly find guilt beyond a reasonable doubt, the issue is one for the jury," *id.,* and the district court's denial of an acquittal motion must be affirmed. This Court "cannot weigh the evidence or judge credibility independently in deciding whether the [d]istrict [c]ourt erred in submitting the case to the jury." *Id.*

To determine whether the government's evidence is such that "a reasonable mind might fairly find ... beyond a reasonable doubt ...," *id.,* "receipt" within the meaning of Section 922, we review the evidence. The government relied upon the testimony of two witnesses to establish "receipt." The first witness was Officer Ellicott. Ellicott testified that, upon patting down Beverly and Austin, he first noticed a waste basket between Beverly's and Austin's feet and then noticed its contents and physical location. Ellicott testified that the waste basket was "directly underneath of [Beverly's] feet," "slightly off to [Beverly's] left," and "right next to [Beverly's] left foot." Ellicott further testified that the waste basket contained two handguns, one of which was "fully loaded." He stated that one gun was inside an unzipped purse with its butt exposed while the other handgun was underneath the purse. Ellicott demonstrated the gun's position inside the purse. Ellicott testified, however, that he neither saw Beverly with a gun in his hand nor found one on his person.

The second witness was Wood, of the State Police Crime Laboratory. Wood testified that the loaded handgun contained five live cartridges and one identifiable fingerprint. Wood further testified that Beverly's left ring finger left the print on "the right side of the [gun] just in front of the cylinder. In other words, it [was] right over the front of the barrel ...." According to Wood, because of the print's location, the gun "would have had to have been laid down." Wood demonstrated how Beverly's left ring finger would have had to have been placed on the gun. Wood also demonstrated where the print was located.

The government relies upon the inferences arising from Ellicott's and Wood's testimony rather than upon direct evidence. The government contends that those inferences establish that Beverly disposed of the gun in the waste basket upon Ellicott's execution of the search warrant and that, prior to Ellicott's execution of the search warrant, Beverly had "received" the gun within the meaning of Section 922 because he *"exercise[d] control"* over the gun. The use of language of control rather than acquisition or purchase suggests that constructive "receipt" is synonymous with constructive possession. In essence, the government incorrectly equates constructive proof of possession with constructive proof of "receipt" and attempts to prove possession through circumstantial evidence. Having proved constructive possession, the government argues that it has proved by inference constructive "receipt."

The inferential chain used by the government to prove "receipt" under Section 922 is sound. We have previously equated circumstantial proof of constructive possession with circumstantial proof of constructive "receipt" under Section 922. *United States v. Craven,* 478 F.2d 1329, 1336 (6th Cir.) ("[t]he government's evidence, which established Craven's constructive possession of the revolver, was circumstantial evidence which allowed the jury reasonably to infer that Craven received the firearm"), *cert. denied,* 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 491 (1973). To prove "receipt" beyond a reasonable doubt, the government may establish "receipt" by inference after proving constructive possession.

The government, however, has failed to prove constructive possession. This Court has stated that:

> [p]ossession may be either actual or constructive and it need not be exclusive but may be joint. *United States v. Black,* 472 F.2d 130 (6th Cir.1972); *United States v. Holt,* 427 F.2d 1114 (8th Cir.1970). Actual possession exists when a tangible object is in the immediate possession or control of the party. Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. *United States v. Virciglio,* 441 F.2d 1295 (5th Cir.1971); *United States v. Burch,* 313 F.2d 628 (6th Cir.1963). Both actual possession and constructive possession may be proved by direct or circumstantial evidence. It is not necessary that such evidence remove every reasonable hypothesis except that of guilt. *United States v. Morgan,* 469 F.2d 83 (6th Cir. 1972); *United States v. Bishop,* 437 F.2d 97 (6th Cir.1971); *United States v. Prieur,* 429 F.2d 1237 (6th Cir.1970); *United States v. Bradley,* 421 F.2d 924 (6th Cir. 1970); *United States v. Burkeen,* 350 F.2d 261 (6th Cir.1965); *United States v. Grimes,* 332 F.2d 1014 (6th Cir.1964).

*Id.* at 1333. The government's evidence has not established Beverly's constructive possession of the gun for three reasons. First, the government has not proven that either the kitchen, the waste basket which contained the gun, or the gun itself was within Beverly's direct control. Second, the government has not established that any of those objects was within Beverly's indirect control. *See id.* (stating that possession can be direct or indirect). Third, the evidence, when viewed most favorably for the government, does not establish constructive possession. Instead it establishes only that Beverly was in the kitchen of Hatfield's residence, that Beverly was standing close to a waste basket which contained two guns, and that Beverly had at some point touched one of the guns.

This is not sufficient. Consequently, the government has not proven beyond a reasonable doubt that Beverly constructively possessed the gun. Because the government has not established constructive possession, we need not consider whether the government's proof permits the inference of constructive "receipt" under Section 922.

Accordingly, we REVERSE.

BAILEY BROWN, Senior Circuit Judge, concurs in the result only.