850 F.2d 693
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Johnnie M. MAZYCK and David Donald Curry, Jr. Defendants-Appellants.
 Nos. 86-5590, 86-5833.
 United States Court of Appeals, Sixth Circuit.
 July 7, 1988.
 
 Before CORNELIA G. KENNEDY and NATHANIEL R. JONES, Circuit Judges, and CONTIE, Senior Circuit Judge.
 CORNELIA G. KENNEDY, Circuit Judge.
 
 
 1
 Defendants, David Curry and Johnnie Mazyck, were convicted in the United States District Court for the Western District of Tennessee of possessing cocaine with the intent to distribute and aiding and abetting. Curry appeals, arguing that his conviction should be set aside because the evidence was insufficient to sustain the conviction, the trial court committed prejudicial error by allowing an officer to testify as an expert witness, the government's use of perjured testimony violated his sixth amendment rights, and he was denied effective assistance of counsel. Mazyck also appeals her conviction, arguing that the judgment should be reversed because the District Court refused to instruct the jury that it had to find that she had actual knowledge that the cocaine was in the bag, failed to give a proffered instruction regarding use of jurors' notes, and because the government failed to prove the chain of custody of the cocaine in question. Finding all of these arguments meritless, we AFFIRM.
 
 I.
 
 2
 On December 13, 1985 federal and local drug enforcement agents were called to the Journey's End Hotel in Memphis after receiving a tip from the hotel's manager that suspicious activity was taking place. They observed defendant Mazyck enter and then leave room 408, in which defendant Curry was staying. Mazyck was next seen outside the hotel with Walter Gaffney, who was also registered at the hotel, and who then left the Journey's End in a yellow Cadillac driven by a fourth person. The agents followed the yellow Cadillac to the LaQuinta Hotel, where Gaffney entered the LaQuinta. Shortly thereafter the yellow Cadillac returned to the Journey's End and picked up defendant Mazyck, who was carrying a tote bag and another piece of luggage. The yellow Cadillac once again returned to the LaQuinta.
 
 
 3
 After Mazyck left the room that she was in with Gaffney at the La Quinta, the agents entered the room and arrested Gaffney. Mazyck was followed to the Roadway Motel where she was arrested by agents and read her rights. She agreed to allow the agents to search any of her bags except the tote bag, which she claimed belonged to a friend. The agents ran a narcotics dog by the luggage and the dog reacted only to the tote bag. Later, the agents discovered over three pounds of cocaine in the tote bag along with various items that are often used to cut and package cocaine for further distribution.
 
 
 4
 Meanwhile, back at the Journey's End, agents observed the driver of the yellow Cadillac leaving Curry's room. Later, Curry also left his room in a hotel van headed for the airport. Curry did not get out at the airport but stayed in the van until it reached a Denny's restaurant. About thirty minutes later, a cab picked him up and took him back to the Journey's End, where he was arrested. After he was arrested, the agents ran a narcotics dog by his belongings, and the dog reacted to his briefcase. When the briefcase was searched, agents found a razor blade with cocaine residue on it. The agents also found cocaine residue in room 408 of the hotel, where Curry had been residing.
 
 II.
 
 5
 Curry argues on appeal that the government produced insufficient evidence to convict him of the possession or of aiding and abetting the possession of the three pounds of cocaine found in Mazyck's tote bag. Our inquiry on review of the sufficiency of the evidence is whether "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). After carefully examining the evidence presented at trial, we believe, viewing the evidence in the light most favorable to the government, that a rational jury could have concluded that defendant was guilty beyond a reasonable doubt.
 
 
 6
 In order to convict Curry on these charges, the government must prove that Curry had either constructive or actual possession of the cocaine, or that he aided and abetted Mazyck's possession of the cocaine. We believe that the government produced sufficient evidence for the jury to find that he committed the crime. First, there is undisputed evidence that Curry, Mazcyk and Gaffney were involved in some enterprise that brought them from Miami to Memphis in December, 1985.
 
 
 7
 Second, the government introduced considerable evidence that Curry was involved with cocaine distribution. When his hotel room was searched, agents found cocaine residue on the coffee table, Joint Appendix at 173, cocaine residue in a brown paper bag found in the wastebasket in the bathroom, id. at 146, a torn up piece of paper that had mathematical figures on it, id. at 172, and the protector edge guard from a single edged razor blade. Id. This evidence is consistent with the government's theory that cocaine was "cut" and packaged in Curry's room. The government also introduced evidence that cocaine residue on a single edged razor blade was found in the briefcase that Curry was carrying at the time he was arrested. The briefcase also contained a bag filled with rubberbands and money wrappers. Id. at 180.
 
 
 8
 Clearly this evidence, when viewed in the light most favorable to the government, demonstrates that Curry was involved in packaging, and distributing cocaine. However, the question remains whether there was sufficient evidence to connect Curry to the specific cocaine found in Mazyck's tote bag. While there is no direct evidence that this cocaine residue was from the same cocaine found in Mazyck's tote bag, the admitted relationship between the defendants, the cocaine residue in Curry's room where Mazyck had been seen shortly before her arrest, and the cocaine residue, cutting paraphernalia and money wrappers in Curry's briefcase could lead a rational jury to conclude, beyond a reasonable doubt, that the cocaine residue found in Curry's hotel room and briefcase was from the three pounds of already packaged cocaine found in the tote bag.
 
 
 9
 In addition to the evidence linking Curry to the drugs found in the tote bag, the government also presented evidence that when she was arrested, Mazyck was carrying a loaded gun registered to Curry, which supports the government's contention that Mazyck was simply a drug courier for Curry. Finally, Curry himself testified at trial in a way that the jury could have found totally incredible. In his testimony, he acknowledged that he had come up to Memphis with Mazyck and Gaffney from Miami. Yet, he disclaimed any knowledge of drugs, asserting that he was there trying to apprehend three female prostitutes who had fled while on bond. Vol. II of Trial Transcript at 316. In our view, Curry's story was so implausible that it would have been perfectly appropriate for a jury to refuse to believe his story, and even to conclude that "the opposite of his testimony is the truth." United States v. Kenny, 645 F.2d 1323, 1346 (9th Cir.), cert. denied, 454 U.S. 828 (1981).
 
 
 10
 Curry testified that he paid for the flights and hotel rooms for himself, Mazyck, and Gaffney on their trips to Memphis. Vol II of Trial Transcript at 325. A jury could find it totally implausible that he would expend such a significant amount of money in order to collect a relatively meager bond that he would have to share with a middleman, Mazyck and Gaffney. This is especially unpersuasive because the only evidence he claimed to have had that the three women were in Memphis was from a pimp whose name he did not even know. Id. at 321. His story was also discredited by agent Courtney, who testified that when he searched Curry's briefcase, it only contained pictures of males who had departed on bond, and it did not contain the pictures of any of the females that Curry claims he was attempting to find. Joint Appendix at 178. Finally, Curry's account was even less believable because he failed to introduce any evidence to back up his claims, and had denied knowing Mazyck and Gaffney when he was first arrested. Id. at 177.
 
 III.
 
 11
 Curry next objects to the use of officer Swain's testimony regarding the training and performance of the narcotics sniffing dog that reacted to Mazyck's tote bag and Curry's briefcase. Curry argues that it was prejudicial error for the District Court to admit such testimony because officer Swain was not a qualified expert on the subject, the testimony was highly prejudicial and irrelevant to the crime charged, and Swain's statement that the dog "hit on" a large amount of narcotics that had previously been in the briefcase was an assertion of fact that otherwise had not been introduced into evidence.
 
 
 12
 Before we discuss the merits of defendant's argument, we note that Curry acknowledges that the testimony in question was in large part, unobjected to at trial. Therefore, we will only reverse the conviction if the District Court committed plain error by allowing such testimony to be introduced. In this case, we cannot say that the District Court committed plain error by allowing officer Swain to testify about the training and performance of the narcotics sniffing dog. It is not unusual for officers investigating drug crimes to testify based on their experience in drug investigations. As the Second Circuit said in United States v. Young, 745 F.2d 733 (2d Cir.1984), cert. denied, 470 U.S. 1084 (1985) regarding the use of testimony of investigative officers, "[t]he qualifications under Rule 702 of neither are questioned, and each offered his opinion as to the nature of events that he had viewed personally. Such opinions are admissible both under Rule 702 as expert opinions and under Rule 701 as lay opinions based on perceived events." Id. at 760. Likewise here, while defendants attempt to question officer Swain's qualifications as an expert,[1] the testimony is based on his perceptions of events he witnessed, and would be admissible under 701 even if not under 702.[2]
 
 IV.
 
 13
 Curry also argues that his sixth amendment rights were violated by the prosecutor's knowing use of perjured testimony. He alleges that the testimony of two of the agents, officer Chambers, and special agent Courtney was fundamentally contradictory and thus should result in a reversal of the conviction. Curry maintains that Courtney and Chambers testified that they travelled together to the LaQuinta Hotel and that they offered conflicting testimony as to which one of them remained at the LaQuinta and which followed the yellow Cadillac back to the Journey's End. While we agree that agent Courtney's testimony could be read to infer that he and officer Chambers rode to the LaQuinta Hotel together, which would create inconsistencies between their versions of the subsequent events, an equally plausible reading of the testimony is that agent Courtney and officer Chambers followed the yellow Cadillac in separate cars, and only were in contact by radio.[3] Furthermore, even if one of the agents were mistaken as to the chronology of the events, or had forgotten precisely who they were driving with during this portion of the surveillance, Curry had ample opportunity to cross-examine the agents on this very point, and the jury could have chosen to disbelieve any or all of the agents' testimony for this reason. A small, explainable inconsistency in the government's proof does not warrant reversal. This is especially true since the questioned testimony does not concern an essential element of the crime. All the prosecution was attempting to show with this testimony was the interaction between the defendants that day. This evidence was merely cumulative, since there was plenty of other unimpeached evidence offered to prove their connection.
 
 V.
 
 14
 Finally, defendant Curry argues that he was denied his right to a fair trial because he was denied effective assistance of counsel. Curry asserts four specific ways that his counsel was ineffective. First, he claims that counsel failed to file a motion to suppress the evidence on the basis of an illegal arrest. Second, that he failed to properly prepare for trial which resulted in the inability to adequately cross-examine agents Courtney and Chambers. Third, he failed to object to the testimony of officer Swain. And, fourth, he failed to object to statements made by the prosecutor which allegedly constituted prosecutorial misconduct.
 
 
 15
 In order to succeed on a claim of ineffective assistance of counsel, a defendant must show first
 
 
 16
 counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 
 
 17
 Strickland v. Washington, 466 U.S. 668, 687 (1984). We do not believe that defendant's allegations rise to the level of ineffective assistance of counsel. On the first claim, defendant has failed to show why a motion to supress the evidence on the basis of lack of probable cause for the arrest would have been likely to succeed. Clearly counsel would not be required to make a motion that was not warranted by the evidence. On the legality of the arrest issue, defendant does not point to one case that would indicate that on similar facts, courts have found the evidence to be less than probable cause for arrest. The officers had probable cause to arrest.
 
 
 18
 Second, as we discussed earlier, the alleged disparity between the testimony of agent Courtney and officer Chambers was not terribly significant to the outcome of the trial. Therefore, while it would have been better for counsel to have explored this question, failure to do so did not significantly prejudice the defense.[4]
 
 
 19
 The third claim of ineffective assistance is that he failed to object to the testimony of officer Swain. Obviously this cannot be the basis for an ineffective assistance claim because, as we discussed above, the testimony in question was appropriately admitted. Finally, defendant claims that counsel was ineffective because he did not object to portions of the prosecutor's closing statement which defendant considers inappropriate. After reviewing the questioned remarks, we can safely say that even if it were at all improper, it did not result in the prejudice that the Supreme Court contemplated in Strickland.
 
 VI.
 
 20
 Regarding the errors alleged by defendant Mazyck, we find that District Court did not err in its instructions to the jury. Contrary to defendant's claim, the trial court carefully covered in its instructions all the elements of the crime charged, including the requirement that the government prove both knowledge and intent. Also, we find no merit in defendant's claim about the failure of the District Court to instruct the jury on the proper use of notes taken at trial. As the government points out, defendant seemed to reject the District Court's offered instruction on the matter. Vol. III of Trial Transcript at 403.
 
 
 21
 Finally, defendant Mazyck argues that the District Court should have excluded the cocaine evidence because the government had not adequately proven the chain of possession. Defendant did not raise this issue at trial, so we would reverse only if the admission of the evidence was plain error. In this case we find no such error. The testimony of agent Bettnor that he sent the cocaine shipped in a sealed package, and that it was returned in a sealed package was enough, barring any other conflicting evidence to prove chain of possession.
 
 
 22
 The judgment of the District Court is AFFIRMED.
 
 
 23
 NATHANIEL R. JONES, Judge, dissenting.
 
 
 24
 Because I find the evidence presented by the government insufficient to support the jury's verdict of guilty as to the appellant Curry, I respectfully dissent from the majority opinion. Although I would affirm the jury's verdict as to the appellant Mazyck, I would reverse its determination as to Curry for the following reasons.
 
 
 25
 The government simply did not demonstrate, beyond a reasonable doubt, that Curry had "constructive" possession of the cocaine that was seized from Mazyck, or that he was "aiding and abetting" in the possession of the drug with the intent to distribute. Indeed, the evidence offered by the government does not, in my view, provide even an inference from which the jury could determine Curry to be guilty of the offenses charged.
 
 
 26
 It is clear and undisputed that the government demonstrated a close association between Mazyck and Curry. She was viewed entering and leaving his motel room at the Journey's End, and when arrested at the Roadway Inn, she was carrying a .38 caliber pistol registered to him. Thus, the fact that the individuals were acquainted is clear; the question is whether the government demonstrated, by its evidence, that Curry was aware of the presence of the cocaine and possessing dominion and control over it, or, in the alternative, knowingly and willfully participating in the possession of the drug with the intent to distribute. I submit that the answer to the above question is no.
 
 
 27
 First, the blue tote bag, in which the cocaine was located, was never in the room occupied by Curry. No testimony was given that would establish, or even lend an inference to establish, that the cocaine at issue was ever in Curry's room or in his dominion or control. Cocaine residue and other materials were found in both Curry and Mazyck's rooms; however, that alone does not establish the elements of the charged offenses.
 
 
 28
 In sum, the government alleges that the residue of the controlled substance found in Curry's room, Curry's false story upon being confronted by the police, and other physical evidence, including Mazyck carrying Curry's firearm, supports the conclusion reached by the jury that Curry had constructive possession of the cocaine and/or aided and abetted in its possession. I disagree and find this case to be weaker than this circuit's decision in United States v. Beverly, 750 F.2d 34 (6th Cir.1984) (per curiam).
 
 
 29
 In Beverly, this court reversed a conviction, thereby holding that the government had failed to demonstrate constructive possession beyond a reasonable doubt. The government's evidence in Beverly demonstrated that Beverly, a convicted felon, was involved in a pat down pursuant to a search warrant executed on a residence in which Beverly was present. During the pat down, the officer noticed a waste basket between Beverly and another man's feet. He observed the basket to contain two handguns, one which was fully loaded. After analysis, Beverly's fingerprint was found on one of the guns. It was clear, however, that Beverly was not seen in actual possession of the gun nor was one found on his person. Id. at 35-36. The government, however, alleged that Beverly "constructively possessed" the weapon which was shipped in interstate commerce.
 
 
 30
 This court found the above evidence to be insufficient to demonstrate constructive possession. The court found that the government had not shown any of the relevant objects to be within Beverly's direct or indirect control. Id. at 37. Instead, we held that the evidence only showed that Beverly was in the residence, standing close to a waste basket in which the guns were located, and, at some point, had touched one of the guns. Id.
 
 
 31
 Similarly, the evidence produced in this case only shows that Mazyck and Curry were close acquaintances and that both were involved in cocaine, as residue of the drug was found in both of their motel rooms. However, no evidence, direct or indirect, was produced that would link Curry to the three pounds of cocaine in Mazyck's possession at the time of her arrest. Therefore, his conviction on constructive possession was error.
 
 
 32
 Likewise, Curry's conviction as to aiding and abetting Mazyck in possession with intent to distribute is without merit. The government's evidence, previously summarized, is not sufficient to demonstrate that Curry helped Mazyck obtain the cocaine or had the ability to exercise any control over the cocaine. Indeed, it would take a quantum leap in logic, as well as speculation and conjecture, to infer from the evidence presented that the cocaine at issue was ever in Curry's "constructive possession" or that he had aided and abetted Mazyck in the possession of the drug. Such an inference is one that I am unwilling to make.
 
 
 33
 Therefore, because I find the government's evidence, even when viewed in the light most favorable to the government, insufficient to support Curry's conviction, I would reverse the jury's verdict.
 
 
 
 [1]
 This effort must fail because we think that Swain was an expert in the behavior of narcotics sniffing dogs. He received specific training and had more than insignificant experience working with this particular dog
 
 
 [2]
 We also consider the substance of the testimony to be highly relevant to the charge against Curry because the charge included possession of cocaine, and the testimony would permit the inference that there had been cocaine in Curry's briefcase. As discussed above, the discovery of this cocaine residue tended to show Curry's involvement with illegal drugs
 
 
 [3]
 In other parts of his testimony, agent Courtney describes how the various agents all followed Curry to the airport in separate cars. Joint Appendix at 222. It is reasonable to assume that this same procedure was followed earlier when the agents followed the yellow Cadillac. This presumption is strengthened because agent Courtney returned to the Journey's End separately from officer Chambers, which implies that they had separate cars
 
 
 [4]
 In fact, it is very plausible that counsel did not cross-examine on this issue so that the officers would not explain or correct the discrepancy