47 F.3d 1172
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles L. WOODS, Defendant-Appellant.
 No. 94-5456.
 United States Court of Appeals, Sixth Circuit.
 Jan. 20, 1995.
 
 Before: NELSON, NORRIS, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Pursuant to an anticipatory search warrant issued by a United States magistrate judge, agents of the Federal Bureau of Investigation seized a 9 millimeter pistol and other property that had just been delivered to the defendant's place of residence. The defendant, a convicted felon who was planning to use the pistol in a holdup, had arranged to have the weapon shipped to him by a man who was keeping it for him in California. The man alerted the authorities, and they set up a controlled delivery by an FBI agent dressed to look like a United Parcel Service delivery person.
 
 
 2
 A motion to suppress the weapon and evidence of its delivery was denied. The district court, sitting without a jury, subsequently found the defendant guilty on all three counts of an indictment charging him with receipt by a convicted felon of a firearm shipped in interstate commerce (18 U.S.C. Sec. 922(g)(1)); receipt by a convicted felon of ammunition shipped in interstate commerce (18 U.S.C. Sec. 922(g)(1)); and receipt of a firearm and ammunition with intent to commit a felony therewith (18 U.S.C. Sec. 924(b)).
 
 
 3
 The defendant contends on appeal (1) that the search warrant was issued without probable cause; (2) that there was insufficient evidence of constructive receipt of the weapon and ammunition; and (3) that the district court erred in concluding that the defendant could be convicted of attempt to receive the firearm. We agree that the defendant could not properly be convicted of an attempt to receive the firearm, the criminal code containing no general "attempt" provision. We reject the first two assignments of error, however, and we shall affirm the conviction.
 
 I.
 
 4
 The defendant, Charles L. Woods, was released from prison in December of 1992. Soon thereafter he contacted Frank Cooper, a friend in Los Angeles, and asked Mr. Cooper to return an automatic pistol, exploding ammunition, a bullet proof vest, and other property that Cooper was holding for him. Defendant Woods told Mr. Cooper that he intended to commit a series of robberies.
 
 
 5
 Mr. Cooper contacted the FBI, which arranged to record a telephone call between Woods and Cooper. In the course of this consensually recorded telephone call Mr. Cooper was instructed to ship the property via UPS to an address in Newport, Kentucky, where Mr. Woods was living with his mother. Mr. Cooper turned the items over to the FBI instead.
 
 
 6
 The FBI planned to obtain an anticipatory search warrant, make a controlled delivery of the package to the residence in Newport, and then use the warrant to recover the package and search the residence. For safety reasons, however, the FBI was reluctant to give Mr. Woods actual possession of the gun. It was decided, accordingly, to make the delivery at a time when Mr. Woods would be out of the house for a scheduled meeting with his probation officer. The FBI assumed that Mr. Woods' mother would accept the package for him in his absence.
 
 
 7
 Special Agent David E. Carrell applied for a search warrant. The application, prepared on a pre-printed form, correctly identified the residence where Mr. Woods was living, but incorrectly stated, in a pre-printed portion, that the contraband "is now concealed" at the residence. In a detailed affidavit incorporated in the application, however, Agent Carrell made it clear that the FBI still had the items and that "undercover FBI agents posing as delivery men" would deliver them "in what will appear to be UPS packaging." The affidavit further disclosed that Mr. Woods would not be present when the FBI made the controlled delivery.
 
 
 8
 The delivery went as planned, except that Mr. Woods' brother signed for the package, not his mother. FBI agents then identified themselves, served the search warrant, and retrieved the package. A search of the residence turned up a sheet of paper that listed several of the items Mr. Woods had asked Mr. Cooper to send him.
 
 
 9
 Once the delivery had been made, Mr. Woods was arrested at the probation office. A federal grand jury indicted him on the charges outlined above, after which Mr. Woods filed his motion to suppress. The same magistrate who had issued the warrant filed a report and recommendation in which he recommended that the motion be granted. The government filed timely objections, which were sustained by the district court. Mr. Woods was ultimately found guilty, and this appeal followed.
 
 II.
 
 10
 The key issue is whether Mr. Woods had constructive possession of his gun and ammunition once they had been delivered to his residence. Like the district court, we believe that the answer to this question is "yes."
 
 
 11
 "Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." United States v. Moreno, 933 F.2d 362, 373 (6th Cir.), cert. denied, 112 S.Ct. 265 (1991). Constructive possession is to be equated with constructive receipt. United States v. Beverly, 750 F.2d 34, 36 (6th Cir.1984).
 
 
 12
 The defendant in Beverly was not shown to have been in constructive possession of the gun at issue there because the government's evidence failed to show that the gun had ever been in the defendant's direct or indirect control. Fingerprint evidence showed that the defendant had touched the gun at some point, but, as the defendant argued, "the statute involved does not prohibit mere touching, and there could be many, many legitimate reasons why or how the fingerprint got on the weapon." Id. at 35. The gun was found secreted in a wastebasket in a residence that was not the defendant's, as far as the opinion indicates, and there was no showing of how the gun had come to be in the wastebasket.
 
 
 13
 A very different situation is presented here. In this case there is no dispute over the fact that the gun had been owned by Mr. Woods before he went to prison. At his request, according to the evidence, his sister-in-law had turned the weapon over to Mr. Cooper as security for a debt. Mr. Cooper testified that he "could not sell it or give it away," because it belonged to Mr. Woods. Woods asked for his property back when he got out of prison, and he obviously expected this request to be honored.
 
 
 14
 By the time the delivery was actually effected, the magistrate observed, "[t]he option of refusing delivery was unavailable to Woods...." But Woods always had the option of not asking Mr. Cooper to ship him the gun in the first place. If he had changed his mind before he left his residence for the appointment with the probation officer, moreover, Woods presumably could have told his relatives not to accept delivery while he was gone. Given that it was Woods' own gun that was being delivered; that it was Woods' own residence to which it was being delivered; that the gun was being delivered at Woods' explicit direction; and that the immediate recipient was Woods' own brother, it seems to us that Woods had the power and the intention to exercise dominion and control over the weapon.
 
 
 15
 Even an incarcerated person can be guilty of constructive possessions of firearms under Sec. 922(g), where "incarceration [does] not affect his power to exercise control over the firearms through other persons." Moreno, 933 F.2d at 373. Mr. Woods' brief absence from home did not vitiate his power to exercise control over the pistol through his relatives.
 
 
 16
 AFFIRMED.