NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2668
_____

UNITED STATES OF AMERICA

v.

FREDERICK ALBERT LYNCH,

                         Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 07-cr-00101)
District Judge:  Honorable Lawrence F. Stengel
_____

Submitted Under Third Circuit LAR 34.1(a)
January 26, 2012

Before: AMBRO, CHAGARES and HARDIMAN, *Circuit Judges*.

(Filed:  January 30, 2012 )
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Frederick Lynch appeals the District Court's judgment of conviction and sentence

after a jury found him guilty of being a felon in possession of a firearm and ammunition,

in violation of 18 U.S.C. § 922(g)(1).  We will affirm.

I

Because we write for the parties, who are well acquainted with the case, we recite only the essential facts and procedural history.

A

In 2005, Lynch was on parole following his release from state prison where he was serving a sentence for robbery. The terms of his parole included geographical restrictions on his movement, a curfew, various reporting requirements, and prohibitions on breaking the law and possessing illegal substances or firearms. He was supervised by Pennsylvania State Parole Agent Harry Gaab.

In April 2005, Gaab learned from a local police department that Lynch was suspected of distributing crack cocaine from his home. That month, Gaab and others searched Lynch's residence, recovering a scale that tested positive for cocaine and mail received by Lynch under an alias at a different address. In June 2005, Lynch tested positive for cocaine. In July 2005, Lynch was shot in the hand while standing on his front lawn and was uncooperative with the police investigation of the shooting. The police found an empty gun box in his home following the incident and they suspected Lynch's girlfriend might have fired the weapon during a struggle. During this period, Lynch also violated his curfew several times. On one occasion, Gaab happened upon Lynch stopped at an intersection at approximately 10:30 p.m. Gaab tailed Lynch and observed him delivering a football-sized package to a residence several miles from his home.

On the evening of August 4, 2005, Gaab and a cadre of state parole and local police officers conducted a warrantless search of Lynch's house. In the master bedroom, which Lynch previously had identified to Gaab as his own, the agents found three forty-caliber bullets under the bed near assorted documents and a prescription drug bottle bearing Lynch's name. They found a forty-caliber pistol in the top-middle drawer of the bedroom dresser, concealed under Lynch's clothing. The agents also seized drug paraphernalia. A DNA test conducted on a swab from the handle of the firearm revealed a mixture of profiles from which Lynch's profile could not be excluded.

B

Lynch was indicted on two counts of violating § 922(g)(1)—one for the weapon, and one for the three rounds of ammunition found under the bed. Lynch moved to suppress the evidence, contending that the state and local agents lacked reasonable suspicion to search his home. After a hearing, the District Court denied the motion and Lynch proceeded to trial. The jury convicted Lynch on both counts after a three-day trial. Lynch moved for judgment of acquittal, arguing that the verdict was not supported by substantial evidence. The District Court denied the motion,[1] and later sentenced Lynch to 240 months' imprisonment and five years of supervised release. Lynch timely filed a notice of appeal.

---

[1] The District Court denied the motion both as untimely and on the merits. The parties agree on appeal that the timeliness ruling was erroneous, but because Lynch's sufficiency argument fails on the merits, we need not reach the timeliness issue.

## II

We exercise plenary review over the denial of the motion to suppress, but we review the District Court's factual findings at the suppression hearing only for clear error. *United States v. Stabile*, 633 F.3d 219, 230 (3d Cir. 2011). Our review of the District Court's ruling on the motion for judgment of acquittal based on the sufficiency of the evidence is plenary. *United States v. Richardson*, 658 F.3d 333, 337 (3d Cir. 2011).

### A

By the Government's admission, the terms of Lynch's parole guaranteed that any search would be conducted pursuant to reasonable suspicion. Where such an agreement exists, we will enforce it provided it does not run afoul of the Constitution. *See United States v. Williams*, 417 F.3d 373, 374, 376 & n.2 (3d Cir. 2005) (holding that a parole condition under which the defendant consented to submit to a search of his "person, property and residence" implicitly required the parole agent to have reasonable suspicion for the search and reserving the question of "whether a parole search can be based on something less than reasonable suspicion"); *see also Samson v. California*, 547 U.S. 843, 857 (2006) ("[T]he Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee."). "To decide whether 'reasonable suspicion' exists, we consider the totality of the circumstances to determine whether the 'officer has a particularized and objective basis for suspecting legal wrongdoing.'" *Williams*, 417 F.3d

4

at 376 (citation omitted) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

In view of Lynch's numerous violations of the terms of his parole in the months preceding the August 4 search, the gunshot wound, and the gun box found by the police, we have no difficulty concluding there was reasonable suspicion for the search. In his attempt to persuade us otherwise, Lynch cites our recent not-precedential decision in *United States v. Webster*, 400 F. App'x 666 (3d Cir. 2010). There, officers searched a probationer's dwelling based on the knowledge that in the days leading up to the search, he "had been involved in two shootings while violating curfew; he was suspected of robbing drug dealers, which was believed to be the motive for the shootings; and he had a violent criminal history and had been able to procure a firearm in the past." *Id.* at 668. Acknowledging that we found reasonable suspicion under those circumstances, *see id.*, Lynch argues that his case is distinguishable on two grounds. First, he points out that he was the victim of a domestic shooting, not the perpetrator of a drug-related shooting. Second, he contends that the incidents providing the reasonable suspicion in *Webster* occurred closer in time to the search than did those on which Gaab relied here; in other words, Lynch claims the evidence of legal wrongdoing in the present case had grown stale by the time of the search.

Neither argument is convincing. Lynch's first contention is based on the fallacy that because there was less evidence to suspect him than Webster, there was insufficient evidence to justify the search of his residence. Lynch incorrectly assumes that the

differences between his and Webster's cases are determinative, and ignores additional facts in his case that weigh in favor of finding reasonable suspicion. Here, the nature of the shooting does not lessen its probative value for the reasonable-suspicion calculation. Lynch was shot on his front lawn and, given his obstinance in the investigation, it was objectively reasonable for Gaab to suspect that Lynch possessed the gun involved. The staleness argument fails as well. None of the information relied upon was more than four months old, and various parole violations occurred up to and during the week preceding the search. The shooting and subsequent seizure of the gun box happened just three weeks before the search. Considering the totality of the circumstances, the District Court did not err when it denied Lynch's motion to suppress.

B

"We review the sufficiency of the evidence in the light most favorable to the government, and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Diallo*, 575 F.3d 252, 256 (3d Cir. 2009) (quoting *United States v. Pritchard*, 346 F.3d 469, 470 n.1 (3d Cir. 2003)) (internal quotation marks omitted). In other words, we will affirm "if there is substantial evidence . . . to uphold the jury's decision." *United States v. Tyson*, 653 F.3d 192, 199 (3d Cir. 2011) (quoting *United States v. Flores*, 454 F.3d 149, 154 (3d Cir. 2006)) (internal quotation marks omitted).

Lynch and the Government stipulated at trial that Lynch had been convicted of a

felony and that the firearm and ammunition at issue had traveled in interstate commerce. Accordingly, the only issue for the jury was whether Lynch knowingly possessed the firearm and ammunition. *See United States v. Higdon*, 638 F.3d 233, 239–40 (3d Cir. 2011) (citing *United States v. Dodd*, 225 F.3d 340, 344 (3d Cir. 2000)) (setting forth the elements the Government must prove to establish a § 922(g)(1) violation). A § 922(g)(1) conviction may be based on either actual or constructive possession.

> Constructive possession exists if an individual knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons. Constructive possession necessarily requires both dominion and control over an object and knowledge of that object's existence.

*United States v. Walker*, 657 F.3d 160, 172 (3d Cir. 2011) (quoting *United States v. Cunningham*, 517 F.3d 175, 178 (3d Cir. 2008)) (internal quotation marks omitted). While the Government is not required to prove exclusive possession, constructive possession may not be shown merely by introducing evidence of proximity. *E.g.*, *United States v. Introcaso*, 506 F.3d 260, 271 (3d Cir. 2007).

Lynch relies on one case from our circuit and two cases from others in arguing that the District Court erred in denying his motion for judgment of acquittal. One of those cases is no longer good law, and therefore we need not discuss it here. *See United States v. Vasquez-Chan*, 978 F.2d 546 (9th Cir. 1992), *overruled by United States v. Nevils*, 598 F.3d 1158 (9th Cir. 2010) (en banc). First, Lynch describes our decision in *United States v. Jenkins*, 90 F.3d 814 (3d Cir. 1996), where we vacated a conviction on sufficiency-of-

7

the-evidence grounds. In *Jenkins*, police pursuing a different suspect found the defendant sitting on a couch in front of a table of cocaine and drug paraphernalia. *Id.* at 816. Notwithstanding his proximity to the table, there was no evidence that Jenkins was working with or connected to the cocaine. *Id.* at 816–17. Although Jenkins was dressed only in his undergarments, he did not reside in the apartment in which he was found. *Id.* at 820. We held that that evidence was insufficient for a reasonable jury to find that Jenkins possessed the drugs. *Id.*

Lynch also cites *United States v. Beverly*, 750 F.2d 34 (6th Cir. 1984) (per curiam), in support of his position. There, a police officer searched a residence pursuant to a warrant and found the defendant and another man in the kitchen. *Id.* at 35. The officer seized two guns from a trash can in the room, and Beverly's fingerprint was found on one of the weapons. *Id.* In vacating the conviction, the *Beverly* court held that the Government had not proven that the trash or its contents "was within Beverly's direct control" or "indirect control," or that Beverly constructively possessed the guns, reasoning that touching alone was not sufficient to prove constructive possession. *Id.* at 37.

*Jenkins* is inapposite. Unlike in *Jenkins*, here the contraband was found in Lynch's own home. Moreover, Lynch was linked to the firearm and its ammunition because they were found in his bedroom and near his clothes and other possessions. In addition, his DNA profile could not be excluded from the sample recovered from the

8

firearm. With regard to *Beverly*, we are not, of course, bound to follow it. Even if we were so inclined, while the case might mitigate the importance of the DNA evidence, it does little to change our view of the other evidence tending to show that Lynch constructively possessed the firearm and ammunition.

In light of the substantial evidence, including the location in which the firearm and ammunition were discovered and their proximity to Lynch's other belongings, a reasonable jury could find beyond a reasonable doubt that Lynch constructively possessed them.

III

For the aforementioned reasons, we will affirm the District Court's judgment.