NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0576n.06

No. 15-5596

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Oct 21, 2016

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| DONTE E. GRIFFIN, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**BEFORE: GRIFFIN, WHITE, and DONALD, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Donte E. Griffin was convicted by a jury of possessing a firearm in violation of 18 U.S.C. § 922(g)(1) (felon in possession of firearm), and was sentenced to ten years' imprisonment and three years' supervised release. He appeals, asserting that audio recordings of his post-arrest phone conversations were improperly admitted at his trial and that the evidence is insufficient to support his conviction. We disagree, and **AFFIRM**.

**I.**

Griffin spent the evening of November 18, 2014, in the company of Qwan Hood, who was pregnant with Griffin's child. With Hood driving, the pair visited a casino in Cincinnati, Ohio, and then Hood's sister's residence in Covington, Kentucky. While there, Griffin received a phone call from another woman, sparking an argument between Griffin and Hood, which continued intermittently. Despite this, Griffin accompanied Hood as she picked up her one-year-

old son from his babysitter. Griffin and Hood continued to argue, and Hood stopped the car in the travel lane of a parking area in the City Heights area of Covington.

At that point, the argument between Griffin and Hood escalated. Hood hit Griffin, who responded by grabbing her. During the altercation, a ring Griffin was wearing fell off and he began to look for it. Not finding his ring in the car, Griffin exited the car and began to look around outside. At that point, Hood put the car in reverse and attempted to leave. According to Hood, Griffin responded by producing a gun and firing one shot into the hood of her car. Hood continued to back up, but Griffin pointed the gun again, so she stopped. Griffin came around to the driver's side of the vehicle, the two spoke, and the situation calmed down.

Meanwhile, the altercation between Griffin and Hood and the gunshot had both been reported to police, and multiple officers converged on the scene. When they arrived, they found Griffin standing between the open driver's side door and the car itself, his hands not in view. Cautious due to the report of gunfire, the officers approached with weapons drawn and ordered Griffin to show his hands and back away from the vehicle. Griffin responded by looking at them, then bending toward or into the vehicle. At the same time, Griffin took his hand from inside his pants pocket or waistband and then did something with it inside the vehicle. After this action, Griffin stood up, complied with the officers' orders, and was eventually handcuffed and placed in a police car. None of the officers observed Griffin with a gun, nor did they find one on his person.

As some of the officers were securing Griffin, others turned their attention to the vehicle, where Hood was still in the driver's seat and her son in his carseat in the back. Officers found a .25-caliber handgun on the rear floorboard behind the driver's seat, a spent .25-caliber shell casing on the ground in front of the vehicle, and an apparently fresh bullet hole in the hood of the

car. The pistol was capable of holding six rounds, but only contained five. Griffin was arrested, and both he and Hood made statements to a detective about what had happened.

Griffin was held in the Kenton County jail on state charges, which were subsequently dismissed. During his time in state custody, Griffin made over 80 phone calls to Hood. State authorities apparently recorded some or all of those calls. During those conversations, Griffin apologized for the events that led to his arrest. Griffin also encouraged Hood to recant the story she had told a detective the night of Griffin's arrest, and to tell the prosecutor or the public defender's office that the bullet hole in her car had been made some other night, that the gun was not his, that he had not done the things he was charged with, and that the charges should be dropped. Griffin also told Hood to deny that he had asked her to change her story, and to say that she had lied earlier because the police had threatened to label her an unfit mother and take her son from her. Finally, Griffin faulted Hood for not promptly following his instructions, telling her that if she really wanted him to come home, she would do as he asked.

The instant indictment was filed on January 15, 2015, charging Griffin with being a convicted felon in possession of a firearm. He pleaded not guilty and was tried before a jury. The only issue for the jury was whether Griffin had possessed the pistol recovered from Hood's car.

At trial, Hood testified that she did not know where the gun had come from, and did not remember any details about it. However, she also testified unequivocally that Griffin had fired a bullet into the hood of her car on the night of November 18, 2014. Five police officers who were on the scene that night also testified; and although none saw a gun in Griffin's hand, each recalled seeing Griffin bend or lean into the driver's side of the car before raising his hands. One officer further testified that Griffin took his hand from inside his pocket or the waistband of his

pants and then did something with it inside the vehicle. The officer who discovered the pistol testified that it was on the floor on the driver's side of the car, where Griffin had been standing when officers saw him lean into the vehicle. Another officer testified that the bullet hole in Hood's car appeared fresh, because there was no evidence of corrosion. And multiple witnesses confirmed that the spent shell casing found next to the vehicle was the same caliber and produced by the same manufacturer as the unspent ammunition found in the pistol. Finally, the government played seven excerpts from the recorded phone calls between Griffin and Hood, including conversations during which Griffin asked Hood to change the story she told the night of his arrest and instead make a statement absolving him of any wrongdoing.

Griffin offered no evidence. Instead, he stressed that no law-enforcement witness saw him with a gun, that no fingerprint or DNA evidence tied him to the gun found in Hood's car, and that police had not performed a gunshot-residue test, which might have confirmed or refuted that he fired the gun that night.

The jury found Griffin guilty. He now appeals, asserting: (1) allowing the government to play excerpts from his recorded conversations with Hood was reversible error; and (2) the evidence is insufficient to support his conviction.

## II.

Griffin asserts that the recordings were not admitted for a proper purpose under Federal Rule of Evidence 404(b), that the government failed to establish a proper foundation for their admission, and that he was prejudiced by the improper evidence. We conclude that any error was harmless, and therefore do not reach Griffin's other arguments.

### A.

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

Fed. R. Evid. 404(b)(1). However, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

> We employ a . . . tripartite standard when reviewing a district court's decision to admit evidence under Rule 404(b). We review for clear error the district court's factual determination that the other act occurred; we examine de novo the court's legal determination that evidence of the other act is admissible for a proper purpose; and we review for abuse of discretion the court's determination that the probative value of the evidence is not substantially outweighed by a risk of unfair prejudice.

*United States v. Barnes*, 822 F.3d 914, 920–21 (6th Cir. 2016) (citations omitted) (quotation marks removed).

Here, the "other acts" evidence consists of Griffin's post-arrest phone conversations with Hood. On appeal, Griffin does not address the first or third prongs of the Rule 404(b) inquiry, but argues, as he did below, that the recordings were not admitted for a proper purpose. Griffin reasons that to be admissible as evidence of spoliation under Rule 404(b), the recordings must show that he threatened or attempted to bribe Hood, and that because the recordings do not show this, they were not admissible. However, even if we agreed with Griffin's view of the law, any error was harmless.

## B.

"When the government presents other convincing evidence, we may deem the admission of 404(b) evidence mere harmless error." *United States v. Bell*, 516 F.3d 432, 447 (6th Cir. 2008) (quoting *United States v. Layne*, 192 F.3d 556, 573 (6th Cir. 1999)); *see* Fed. R. Crim. P. 52(a). "[A]n error is harmless unless one can say, with fair assurance that the error materially affected the defendant's substantial rights—that the judgment was substantially swayed by the

error." *United States v. Gibbs*, 797 F.3d 416, 425–26 (6th Cir. 2015) (quoting *United States v. Clay*, 667 F.3d 689, 700 (6th Cir. 2012) (alteration in *Gibbs*).

Griffin asserts that admission of the recordings was not harmless because the prosecutor used the recordings improperly, engaging in misconduct by mischaracterizing or misquoting the recordings and using them to effectively offer an improper opinion regarding Hood's credibility. However, Griffin does not assert prosecutorial misconduct as a separate basis for relief; thus we do not analyze Griffin's prosecutorial misconduct allegations as an independent claim.[1]  Rather, we focus on whether Griffin's substantial rights were affected by the admission of the recordings and the government's use of them. *See Gibbs*, 797 F.3d at 425–26. They were not.

The only issue for the jury was whether Griffin possessed the pistol found in Hood's car. The critical evidence on that point was not the recordings, but the eyewitness testimony from Hood and the police officers, combined with the physical evidence—the pistol, the empty shell casing, and the bullet hole in the hood of the car.

At trial, Hood was asked: "Did Mr. Griffin fire a bullet into the hood of your car?" She answered: "Yes." (R. 48, PID 330:3-5.) She was later asked: "You remember him firing a bullet into the hood of your car?" She answered: "Yes." (*Id.* at 330:18-20.) When asked to explain why she did not drive away after Griffin fired, she explained: "Because he pointed the gun again." (*Id.* at 331:12-21.)

True, the prosecutor used the recordings in an attempt to bolster Hood's credibility. In essence, the government asked the jury to infer that since Griffin asked Hood to recant her prior statement, that prior statement must have been damaging to Griffin, and since that prior

_____

[1] Nor did Griffin object to the prosecutor's arguments when made or in his motion for a new trial.

statement must have been damaging to Griffin, Hood's testimony that Griffin had fired at her car—also damaging—must be true. But Griffin goes too far in suggesting this chain of inferences deprived the jurors of the ability to make up their own minds. Griffin's counsel argued for a different interpretation of the calls—that Griffin was simply asking Hood to correct her inaccurate account, and encouraging her to tell the truth—which the jury was free to accept. Further, the district court instructed the jury that "[t]he lawyer's statements and arguments are not evidence," (R. 49, PID 409), and also gave a limiting instruction covering the jury's consideration of the recordings, (*id.* at 418).[2] Jurors are presumed to follow instructions, and Griffin offers nothing to rebut the presumption that the jury followed the instructions in reaching its guilty verdict. *United States v. Harvey*, 653 F.3d 388, 396 (6th Cir. 2011).

Further, the five officers testified consistently: they arrived on the scene to find Griffin standing between the body of Hood's car and the open driver's side door; with their guns drawn, they ordered him to show his hands; Griffin looked at them, but before complying, he bent or leaned into the car. One officer—the only officer who could see Griffin's hands at all—further testified that, as Griffin leaned into the car, he took his hand from inside his pocket or the waistband of his pants and then did something with it inside the vehicle. Then, after Griffin was handcuffed, the officers found the pistol in the car, immediately next to where Griffin had been standing when they saw him lean into the vehicle. And, in addition to an apparently fresh bullet hole in the hood of the car, they found a spent .25-caliber shell casing on the ground in front of

---

[2] The jury was instructed that they "may consider whether this evidence shows a consciousness of guilt and determine the significance to be attached to any such conduct," that "feelings of guilt, which are present in many innocent people, do not necessarily reflect actual guilt," that they "should consider that there may be reasons for Mr. Griffin's actions that are fully consistent with innocence," and that it was "up to [them] . . . to determine whether or not this evidence shows a consciousness of guilt and the weight or significance to be attached to any such evidence." (R. 49, PID 418.)

the vehicle that was the same caliber and make as the rounds in the pistol. Additionally, the pistol's magazine was capable of holding six rounds, but contained only five. Given the strength of this unchallenged evidence, the result of Griffin's trial would not have been different had the recordings not been admitted. Any error resulting from the admission of the recordings was therefore harmless.

### III.

Griffin also asserts that the evidence was insufficient to support his conviction.

> [T]his Court reviews de novo a district court's denial of a Rule 29 motion for judgment of acquittal based on the insufficiency of the evidence. The Court must construe the evidence in the light most favorable to the government, and then determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Clay*, 667 F.3d at 693 (citations omitted) (quotation marks removed).

"To obtain a conviction under [18 U.S.C.] § 922(g)(1), the government must prove that 'the defendant had a previous felony conviction,' that 'the defendant knowingly possessed the firearm specified in the indictment,' and that 'the firearm traveled in or affected interstate commerce.'" *United States v. Morrison*, 594 F.3d 543, 544 (6th Cir. 2010) (quoting *United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007)). Griffin stipulated to the first and third elements of the offense.

As to the second element, under 18 U.S.C. § 922(g)(1),

> [a] weapon is actually possessed if it is within the immediate power or control of the individual. A weapon is constructively possessed if the government can show the defendant knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. Possession of either variety may be proven by direct or circumstantial evidence.

*United States v. Walker*, 734 F.3d 451, 455 (6th Cir. 2013) (citations omitted) (quotation marks removed).

Griffin correctly points out that Hood did not remember details of the gun Griffin fired into the hood of her car, so her testimony did not tie Griffin to the .25-caliber pistol specifically. Griffin is also correct that none of the police saw him holding a gun. But "actual possession can be shown when there is no direct evidence of possession." *Id.* at 457. And this case is not a close call, because the circumstantial evidence that Griffin actually possessed the pistol is extensive: Hood testified that Griffin fired a gun at her car, then pointed the gun again when she continued to back away; a spent .25-caliber shell casing was found just feet from the car; the spent .25-caliber casing came from the same manufacturer as the ammunition in the .25-caliber pistol found in the car; one round was missing from the .25-caliber pistol found in the car; and police officers testified that the .25-caliber pistol was found immediately next to where Griffin had leaned into the car.

Although Griffin accurately observes that there was no fingerprint, DNA, or gunshot-residue evidence directly linking him to the pistol, such evidence is not necessary to support a conviction. *See Morrison*, 594 F.3d at 545 (fingerprints not necessary to support conviction under § 922(g)(1)). Griffin's reliance on *United States v. Beverly*, 750 F.2d 34 (6th Cir. 1984) (per curiam), is misplaced. In *Beverly*, the defendant was found in another person's kitchen standing near a waste basket that had two handguns in it. *Id.* at 35. One of the handguns bore the defendant's fingerprint. *Id.* We held that evidence insufficient to support a finding of constructive possession, reasoning that the fingerprint proved only that the defendant had once touched the gun, not that he possessed it at the time of his arrest, and that the government had not proven the defendant controlled the waste basket, the kitchen, or either of the guns. *Id.* at 37. But *Beverly* is distinguishable. First, *Beverly* dealt only with constructive possession, *id.* at 35–37; here, the evidence supports that Griffin actually possessed the handgun. Second, "[a]s an en

banc court, we . . . distinguished *Beverly* as a proximity-only case without any evidence 'connecting the gun to the defendant.'" *United States v. Vichitvongsa*, 819 F.3d 260, 276 (6th Cir. 2016), *cert. denied*, (U.S. Oct. 3, 2016) (quoting *United States v. Arnold*, 486 F.3d 177, 184 (6th Cir. 2007) (en banc)) (brackets omitted). *Beverly* is inapposite when the government fills the "'evidentiary gap' . . . connecting the gun to the defendant." *Id.* (quoting *Arnold*, 486 F.3d at 184). The evidence needed to move from mere proximity to constructive possession "is minimal." *Walker*, 734 F.3d at 456. Here, that gap is filled by evidence that Griffin held and fired a gun just minutes before police arrived, the handgun was found immediately next to where Griffin had been standing, one round was missing from the weapon, and a .25-caliber shell casing matching the ammunition in the weapon was found in the area where Hood testified Griffin was standing when he fired into the hood of her car. That evidence is more than sufficient to sustain Griffin's conviction.

**IV.**

For these reasons, we **AFFIRM**.