NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0704n.06
Filed: October 2, 2007

Case No. 05-4255

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| JEROME HASSAN MACKEY, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

BEFORE:  BATCHELDER and DAUGHTREY, Circuit Judges; ACKERMAN[*], District Judge.

**ALICE M. BATCHELDER, Circuit Judge.**   Defendant Jerome Hassan Mackey ("Mackey") appeals his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and for possessing with the intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1).  Mackey argues that the government presented insufficient evidence on the possession element of each offense, and that the district court committed numerous evidentiary errors.  Finding no merit in these contentions, we **AFFIRM** his conviction.

**I.**

On May 25, 2004, a group of officers from the City of Dayton Police Department executed a search warrant on an apartment located on West Grand Avenue in Dayton, Ohio.  The surveillance

_____

[*]The Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

team arrived at 8:30 p.m. and monitored the apartment complex for thirty minutes prior to the execution of the warrant. During this time, the officers witnessed four to six people enter the building, stay a short period of time, and then leave; the officers did not see Mackey enter or exit the building during this time period. The entry team arrived around 9:00 p.m and executed the warrant. They knocked and announced their presence and, after hearing individuals running inside the apartment, broke down the common door to the building and entered the apartment that they were authorized to search.

The officers progressed through the living room and into the kitchen, where they found Michael Murray standing next to a plastic table and Mackey standing approximately ten feet away from Murray, with his back to the officers and his hands outstretched over the sink. The officers found a loaded gun — with certain distinctive characteristics — in the sink, just inches beneath Mackey's hands, and loose marijuana, packaged marijuana, plastic baggies, and digital scales on the counter next to him, well within an arm's reach. The officers patted down Mackey and discovered a silver cell phone in the pocket of his pants. The officers handcuffed Mackey, laid him on the floor, and set the cell phone on the ground next to his head.[1] During the next forty-five minutes, while the officers searched the apartment and collected evidence, the cell phone rang approximately five to seven times. Each time the phone rang, the screen displayed a picture of a handgun on top of a pile of money and marijuana. The officers testified at trial that the gun pictured on the cell phone appeared to be the same gun recovered from the sink, and that the marijuana pictured on the cell

---

[1]Defense counsel used purported gaps in the chain of custody and inconsistencies in the officers' testimony to argue that the phone introduced into evidence was not the phone recovered from Mackey. Because, when reviewing for sufficiency of the evidence, we must consider "*all of the evidence* . . . in the light most favorable to the prosecution," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), we will assume for purposes of this appeal that the phone introduced into evidence was the actual phone seized from Mackey's person.

phone was packaged similarly to the marijuana found on the kitchen counter.

At trial, one officer testified that, in his expert opinion, the apartment was set up for the sole purpose of selling illegal narcotics. The apartment had barricades on the front and back doors; it was sparsely furnished, without a stove, refrigerator, or toiletries; a doorman stood at the entrance and collected money from individuals as they entered; and the apartment complex maintenance man testified that every time he entered the apartment, he saw guns and narcotics everywhere.

In June 2004, the grand jury returned a two-count indictment against Mackey, charging him with (1) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and (2) possessing with the intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1). Just two days prior to trial, Mackey filed a motion in limine, seeking to exclude any pictures contained on the cell phone seized from his person as well as any corresponding testimony. The cell phone contained thirteen pictures, but the government sought to introduce only the picture portraying the gun, marijuana, and money. Mackey argued that this picture was irrelevant and, alternatively, that it was substantially more prejudicial than probative. The district court denied Mackey's motion, concluding that sufficient evidence linked the phone to the defendant, that the gun displayed in the picture might be the same gun that was found in the sink, and that the marijuana bags displayed in the picture were similarly packaged to the bags found on the kitchen counter.

The jury trial began in May 2005. At the conclusion of the government's case-in-chief, Mackey moved for judgment of acquittal under Fed R. Crim. P. 29, which was denied by the district court. After the defense presented its evidence, Mackey renewed his motion for judgment of acquittal, which was again denied by the district court. The jury then returned a guilty verdict on both counts of the indictment. In June 2005, Mackey filed a post-verdict motion for judgment of

acquittal. The district court denied this motion as well, and Mackey filed a timely notice of appeal.

**II.**

Mackey argues that the government presented insufficient evidence to support his conviction under either count of the indictment. "A defendant claiming insufficiency of the evidence bears a very heavy burden." *United States v. Wright*, 16 F.3d 1429, 1439 (6th Cir. 1994) (quotations omitted). We must deny a defendant's sufficiency-of-the-evidence claim if we conclude that, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). As part of this review, we neither weigh the evidence nor judge the credibility of the witnesses. *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999).

We first address whether the government presented sufficient evidence to convict Mackey of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). To sustain a conviction under 18 U.S.C. § 922(g)(1), the government must prove three elements beyond a reasonable doubt: (1) "that the defendant has a prior conviction for a crime punishable by imprisonment for a term exceeding one year; (2) that the defendant thereafter knowingly possessed the firearm and ammunition specified in the indictment; and (3) that the possession was in or affecting interstate commerce." *United States v. Schreane*, 331 F.3d 548, 560 (6th Cir. 2003). Mackey stipulated to the first and third elements, but vehemently contends that he did not possess the firearm in the sink.

Possession under 18 U.S.C. § 922(g) may be either actual or constructive, *United States v. Moreno*, 933 F.2d 362, 373 (6th Cir. 1991), and the government argued both actual and constructive possession to the jury. "Actual possession exists when a tangible object is in the immediate

4

possession or control of the party." *United States v. Beverly*, 750 F.2d 34, 37 (6th Cir. 1984). "Constructive possession exists when a person . . . knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998). "Presence *alone* near a gun . . . does not show the requisite knowledge, power, or intention to exercise control over the gun to prove constructive possession." *United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007) (*en banc*) (quotations omitted). But where "other incriminating evidence [is] coupled with presence, . . . [it] will serve to tip the scale in favor of" constructive possession. *United States v. Birmley*, 529 F.2d 103, 107 (6th Cir. 1976). "Both actual possession and constructive possession may be proved by . . . circumstantial evidence." *Beverly*, 750 F.2d at 37.

We find that the government presented sufficient circumstantial evidence from which the jury reasonably could have concluded that Mackey had either actual or constructive possession of the firearm in the sink. In our recent *en banc* decision in *Arnold*, 486 F.3d at 181, we found sufficient evidence for a rational trier of fact to "conclude beyond a reasonable doubt that [the defendant] possessed the gun the officers found below his seat." *Id.* We noted that "the critical point is that the jury could have drawn different inferences from [the government's] evidence, and our mandate is to affirm when the jury's choice was a rational one." *Id.* Here, the officers testified that they found Mackey standing in front of the kitchen sink with his arms outstretched, his hands just inches from the gun. A juror rationally could have concluded that Mackey had dropped the gun when he heard the officers enter the apartment, thus establishing that he had the "immediate possession or control" of the gun that is necessary for actual possession. *See Beverly*, 750 F.2d at 37. Or a juror could have just as rationally concluded that Mackey was attempting to pick up the gun in order to confront the

5

approaching officers, thus proving that he had "the power and the intention . . . to exercise dominion and control" over the gun that is necessary for constructive possession. *See Kincaide*, 145 F.3d at 782. Indeed, drawing from this evidence any inference other than that of actual possession strikes this court as inherently unreasonable. Nonetheless, even if the jury did not make the inference of actual possession, they could certainly have found constructive possession.

Mackey argues that mere presence near a firearm is insufficient to show constructive possession, *see Birmley*, 529 F.2d at 107-08, and that this case is controlled by our decision in *United States v. Beverly*, 750 F.2d at 34. We disagree and find that the government has presented sufficient evidence to establish constructive possession. The facts in *Beverly* are readily distinguishable from the facts before us. In *Beverly*, a police officer was searching Mr. Hatfield's residence when he discovered two handguns in a waste basket between Mr. Beverly's and Mr. Austin's feet. Even though one of the guns contained Mr. Beverly's fingerprint, the court found this evidence insufficient to establish constructive possession of the gun. *Id.* at 37. Here, unlike in *Beverly*, the gun was within the reach of only the defendant (rather than within the immediate vicinity of two individuals); the officers found the gun inches from the defendant's hands (rather than buried in a basket near the defendant's feet); and the officers found the gun in an apartment that appeared to be used solely for drug trafficking (rather than in the residence of a third party). We thus find *Beverly* to be entirely distinguishable and not controlling here.

Our recent case law has acknowledged that "[a]lthough 'mere proximity' to a gun is insufficient to establish constructive possession, evidence of some other factor — including connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise — coupled with proximity may suffice." *United States v.*

6

*Newsom*, 452 F.3d 593, 610 (6th Cir. 2006). Here, in addition to mere proximity, the government has presented evidence of Mackey's "connection" with the gun, namely, that a picture stored in the cell phone found in his pocket depicted the very same gun (or at least what appeared to be the very same gun) found just inches from his hands. The government has also demonstrated that Mackey made "a gesture implying control" over the gun, namely, his hands were outstretched just a few inches from it. We accordingly reject Mackey's arguments and conclude that the jury could have found that Mackey constructively possessed the gun.

Mackey argues as well that the government did not present sufficient evidence to convict him of possessing with the intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1). "The essential elements for a violation of 21 U.S.C. § 841(a)(1) are 'for any person knowingly or intentionally to . . . possess with intent to . . . distribute . . . a controlled substance.'" *United States v. Clark*, 928 F.2d 733, 736 (6th Cir. 1991) (quoting 21 U.S.C. § 841(a)(1)). Again Mackey disputes only the possession element of this offense, arguing that the government's evidence was insufficient to establish constructive possession because it demonstrated only that he was in close proximity to the contraband. While mere proximity to an item, standing alone, is insufficient to establish constructive possession, *Newsom*, 452 F.3d at 609-10; *Arnold*, 486 F.3d at 183, where "other incriminating evidence [is] coupled with presence, . . . [it] will serve to tip the scale in favor of" constructive possession, *Birmley*, 529 F.2d at 107.

Here, contrary to Mackey's protestations, the government has presented "other incriminating evidence" in addition to his close proximity to the marijuana. The officers found Mackey in an extremely active "drug house," where, during the thirty minutes prior to the officer's entry, the surveillance team saw four to six individuals pay money to the doorman, stay briefly, and exit

7

swiftly. Mackey, however, was unlike those individuals who stopped by the apartment to purchase drugs. The government introduced evidence from which a juror might rationally have concluded that Mackey was an active participant in the drug-trafficking activities occurring at that location: many of the people in the apartment knew him; he had been at the apartment for at least thirty minutes prior to the officer's entry; and during this thirty-minute period, many individuals stopped by the apartment to purchase marijuana.

Moreover, Mackey's position at the time of arrest is further incriminating evidence against him. Unlike the cases upon which Mackey relies, *see United States v. Brown*, 3 F.3d 673 (3d Cir. 1993) (involving a defendant who was arrested while *entering* a house that contained large quantities of narcotics); *United States v. Jenkins*, 90 F.3d 814 (3d Cir. 1996) (involving a defendant who was arrested while *sitting* with another individual on a couch near a coffee table filled with cocaine and guns), Mackey was not merely within close proximity to the drugs; he was actually hovering, with arms outstretched, over a gun, marijuana, scales, and baggies, all of which were within an arm's reach. Some of the marijuana had already been packaged and some of it was loose on the counter. The position of Mackey's outstretched hands near the marijuana, scales, and baggies suggests that he was handling and packaging the marijuana just prior to the officers' entry; indeed, it would not be irrational for a juror to draw that inference. *See Arnold*, 486 F.3d at 181. And finally, the government introduced additional evidence from which a rational juror could "connect" Mackey to the marijuana on the counter. *See Newsom*, 452 F.3d at 610. The picture on the cell phone recovered from his pocket displayed several baggies of marijuana that were packaged in a manner similar to those found on the kitchen counter. While this is by no means conclusive evidence of Mackey's constructive possession of the particular baggies on the kitchen counter, it provides one

piece of circumstantial evidence suggesting that he exercised dominion and control over those particular items. In sum, the government produced sufficient evidence for the jury to conclude that Mackey had constructive possession of the marijuana on the kitchen counter.

We therefore find sufficient evidence from which a rational juror could have concluded that Mackey possessed both the gun and the marijuana, and we find his claims of insufficiency of the evidence baseless.

**III.**

Mackey next contends that the district court erred by admitting pictures and data from the cell phone found in his pocket at the time of his arrest, arguing, first, that the evidence was not relevant and, second, that the evidence was unfairly prejudicial. A district court may not admit evidence that is not relevant to the proceeding. Fed. R. Evid. 402. "The standard of review for the admission of evidence where relevance is at issue is abuse of discretion." *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 516 (6th Cir. 1998). "The Federal Rules of Evidence set a low bar for relevance." *Cambio Health Solutions, LLC v. Reardon*, Nos. 04-6485, 05-5041, 2007 WL 627834, at *5 (6th Cir. Feb. 27, 2007). "'Relevant evidence' means evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added). The cell phone recovered from Mackey's person displayed a picture of a gun on top of a pile of money and marijuana. The government attempted to establish Mackey's constructive possession of a gun by arguing that the gun found in the sink directly below his hands was the same gun displayed in the picture stored on the cell phone found in his pocket. At least two officers testified that the gun depicted in the picture had some very distinctive features and appeared to be the same gun found in

the sink. We find that this picture was relevant in determining whether Mackey had constructive possession of the gun in the sink because his possession of a cell phone with a picture of the very gun he is charged with possessing (or at least what appeared to be the same gun) has *some* tendency to demonstrate Mackey's power and intent to exercise dominion and control over that item. *See Kincaide*, 145 F.3d at 782.

Mackey argues that the present case is similar to *United States v. Hendrix*, No. 94-1404, 1995 WL 218472 (6th Cir. April 12, 1995), but we disagree with his reading of that case. In *Hendrix*, the defendant appealed his conviction for a drug offense, contending that the district court abused its discretion by allowing the government to introduce a photo portraying four men, including the defendant, one of whom was holding cash and one of whom was displaying a gang symbol. We concluded that the photo was irrelevant because there was no connection between the depictions in the photo and the defendant's involvement in drug activity. *Id.* at *2. In contrast, here the connection between the picture and Mackey's firearm-possession charge is readily apparent: the picture was stored in a phone recovered from Mackey's pocket; there was evidence that the picture was taken during the time period Mackey possessed the phone; and the gun displayed in the picture appeared to be the same gun found within inches of Mackey's hands. We therefore conclude that Mackey's reliance on *Hendrix* is misplaced.

Mackey also half-heartedly argues that the data from the phone was irrelevant and thus inadmissable. At trial, Mackey attempted to distance himself from the picture on the cell phone by questioning the chain of custody for the phone and arguing that the phone actually belonged to his sister, not to him. The government, in turn, introduced data from the phone — including names from the phone book, incoming and outgoing calls stored in the phone's history, and the date on which

the picture of the gun was taken — to combat Mackey's chain of custody and ownership arguments. The government sought particularly to show that, regardless of who owned the phone, Mackey possessed and used the phone on the day the picture of the gun was taken. We find that all of this data from the cell phone was relevant to establish the chain of custody and Mackey's possession and use of the phone — issues specifically created by the defense's arguments at trial. A defendant cannot create an issue at trial and then argue that the government's evidence to counteract that argument is irrelevant. We thus conclude that the district court did not abuse its discretion in admitting that evidence.

Having found all this evidence to be relevant, we turn to Mackey's unfair prejudice argument. "[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Fed. R. Evid. 403. "We review a district court's Rule 403 determination only for an abuse of discretion." *United States v. Sassanelli*, 118 F.3d 495, 498 (6th Cir. 1997). On appeal, "[w]e must look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Zipkin*, 729 F.2d 384, 389 (6th Cir. 1984). "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993) (quotations omitted).

Mackey does not argue exactly what sort of unfair prejudice he suffered by the admission of the picture or other data recovered from the cell phone; he merely argues that the present case is similar to the Seventh Circuit's decision in *United States v. Thomas*, 321 F.3d 627 (7th Cir. 2003). That case, however, is utterly inapposite here. The defendant in *Thomas* was charged with being a

felon in possession of a firearm, and the appeals court held that the district court violated Fed. R. Evid. 403 by admitting a photograph of the defendant's tattoo, which portrayed of a pair of revolvers, because the court could not "see how the . . . photo of the tattoo was admitted for any purpose other than to establish [the defendant's] propensity to possess guns." *Id.* at 631. The court stated: "If a tattoo indicates ownership of an object, the mind reels at the legal and evidentiary consequences of the unicorns, dragons, mermaids, and other flights of fancy that decorate people's bodies." *Id.* at 633. In stark contrast to the facts in *Thomas*, the picture in the present case did not portray a tattoo of an imaginary firearm offered to show the defendant's propensity to possess guns; rather it was a picture of an actual gun — which appeared to be the very gun that Mackey was charged with possessing — offered to show Mackey's power to exercise dominion and control over that item (i.e., constructive possession), which is an essential element of the crime charged. We therefore find *Thomas* to be entirely unpersuasive here and fail to see any other reason why the admission of this evidence was unfairly prejudicial under Fed. R. Evid. 403. We accordingly reject Mackey's evidentiary challenge to the picture and data retrieved from the cell phone found on his person.

**IV.**

Mackey's final argument on appeal is that three separate evidentiary errors unfairly prejudiced his case, thus necessitating a new trial. "Errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair." *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983); *see also United States v. Parker*, 997 F.2d 219, 221 (6th Cir. 1993). Mackey alleges three separate errors, but raises these arguments in a perfunctory manner, presenting no relevant case law in support. We review each of these three evidentiary decisions for abuse of discretion, *United States v. Chambers*,

12

441 F.3d 438, 455 (6th Cir. 2006), and find no error in any of them.

Mackey first contends that the district court erred in admitting a picture of the arrest scene that depicted him in handcuffs. Early in the trial, the district court prohibited the government from introducing that picture. Later in the trial, however, the government learned that two of the testifying officers had incorrectly testified concerning the location of the cell phone once it was removed from Mackey's pocket. Defense counsel attempted to capitalize on this erroneous testimony, contending that the government could not establish a proper chain of custody for the phone. In response, the government again asked to introduce this picture, this time for the purpose of aiding its witnesses in establishing the location of the cell phone at the scene of the arrest. The district court allowed the government to use the picture for this particular purpose and gave a limiting instruction to the jury, in which the court stated: "[T]he purpose of [the] photograph was to show objects and their relationship to one another[.] I want you to remember that the fact that the defendant . . . [was] arrested has already been testified to and that an arrest is not evidence of guilt to be considered by you." We do not find any error in the admission of this picture, *see United States v. Padin*, 787 F.2d 1071, 1079 (6th Cir. 1986) (acknowledging that "the prosecutor is entitled to show [the defendant's] appearance when arrested"), especially in light of the district court's limiting instruction and the need to clarify the chain of custody issue.

Mackey next argues that the district court erred in allowing the government to recall, during its case-in-chief, the two officers who had testified incorrectly regarding the placement of the cell phone at the scene of the arrest. Mackey offers no legal support for this argument, and we have found none. The trial court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence." Fed. R. Evid. 611(a). The trial court is imbued

with substantial discretion when deciding whether a witness should be allowed to retake the stand. *United States v. Maddox*, 944 F.2d 1223, 1229-30 (6th Cir. 1991). Where the government has not yet rested its case-in-chief, the district court may allow the government to recall a witness "to supply a technical requirement or a detail overlooked by inadvertence," or to correct a minor inconsistency on a tangential matter. *See United States v. Rodgers*, No. 93-5134, 1993 WL 330642, at *2 (6th Cir. Aug. 30, 1993) (quotations omitted). Here, we find that the court did not abuse its discretion. The officers admittedly made a mistake in their testimony, which the government openly sought to clarify and correct. Under these circumstances, the government was actively seeking to correct erroneous testimony in order to present a truthful account to the jury; this is not an instance where the government was covertly attempting to engage in any sort of underhanded sandbagging. We thus find no error in the district court's ruling.

Mackey lastly argues that the district court erred in allowing the government to treat Mackey's sister, Jo Karen Nelons, as a hostile witness. At trial, Nelons's testimony contradicted her prior statement to the authorities. For example, in her prior statement, she said that she "bought the phone and had [Mackey] pick it up for [her]." At trial, however, when asked if she "had purchased th[e] phone and had [her] brother pick it up for [her]," she responded, "No, that[ is] not correct." We thus conclude that the trial court did not abuse its discretion by declaring Mackey's sister — a government witness who explicitly contradicted her prior statement — to be a hostile witness. *See United States v. DeBose*, 410 F.2d 1273, 1276 (6th Cir. 1969) (finding that the district court did not abuse its discretion in characterizing the witness as hostile where she "was related to the defendants" and where she "gave a story on the witness stand different from that she had previously told the prosecutor").

Finding no error in any of these three evidentiary decisions separately, we certainly do not find a denial of due process cumulatively, *see Parker*, 997 F.2d at 221.

## V.

For the foregoing reasons, we **AFFIRM** Mackey's conviction.