**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0545n.06

**No. 07-3655**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Aug 06, 2009**

LEONARD GREEN, Clerk

|   |   |   |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| RODNEY F. KING, | ) | |
| | ) | **OPINION** |
| Defendant-Appellant. | ) | |

BEFORE:    GILMAN and McKEAGUE, Circuit Judges; and BARRETT, District Judge.[*]

**McKEAGUE, Circuit Judge.**  A federal jury convicted Rodney F. King of being a felon in possession of a firearm and of possessing narcotics with the intent to distribute.  King represented himself at trial, although he had assistance from legal counsel.  On appeal, he contends that there was insufficient evidence that he possessed either the firearm or the narcotics.  He also raises several purported errors involving the testimony of a detective.  Finally, he attacks the reasonableness of his sentence, relying primarily on his age (57 years) at the time of sentencing.  For the reasons set forth below, we affirm King's convictions and sentence.

---

[*]The Honorable Michael R. Barrett, United States District Judge for the Southern District of Ohio, sitting by designation.

**I**

On January 24, 2006, at about 4:00 p.m., the Toledo Police Department executed a search warrant at 1215 Page Street, Toledo Ohio, looking for evidence related to narcotics trafficking. Once the SWAT team had secured the residence, Detective Brent Scoble and his search team entered the home and found King face-down on the floor in the living room near the doorway to the middle bedroom and another man, Malcolm Richardson, face-down in the living room. Detective Scoble set up evidence collection on the kitchen table and searched the front bedroom, but did not conduct the rest of the search himself; other members of Detective Scoble's search team conducted the search. Immediately upon entry, Detective Waylond Rider searched the two men for weapons and read them their *Miranda* rights. Detective Rider found $220 in U.S. currency on King's person. Detective Gregory Mattimore noticed a rock of crack cocaine on a table in one of the bedrooms and asked, "[W]hose bedroom is this?" and King responded that it was his bedroom. Joint Appendix ("JA") 142.

The search of the middle bedroom turned up two prescription bottles with King's name on them, a syringe box with King's name on it, and a piece of mail, postmarked January 24, 2006, addressed to King at 915 Peck, Toledo Ohio. In the same room, Detective Rider also found a set of keys, one of which opened the front door. Detective Mattimore discovered a loaded .32 caliber Kimel revolver in the closet of the bedroom on the floor among some shoes. Detective Mattimore asked King if there were any more firearms in the residence and King replied, "[N]o, that's it." JA 145-46. No other weapons were found in the residence.

Detective Nora Mugler asked King if there were any drugs in his bedroom and he responded that there was a bag of marijuana in his coat. Detective Mugler subsequently found a bag of marijuana in the coat. The search team found a large quantity of crack cocaine between the garbage can and the garbage bag in the bedroom. Additionally, the search team found a purple plastic plate, a razor, plastic baggies, and crack cocaine in smaller quantities in the bedroom. No fingerprints were found on the plates or the firearm. The crack cocaine amounted to seventeen grams.

When Detective Scoble tried to speak to King about the firearm and the drugs, King replied that he did not want to talk about it, but added "that he had been doing this since before [Detective Scoble] was in police training." JA 129. Detective Scoble laughed and replied that King had probably been committing crimes before the detective was born, to which King replied, "No, I'm talking about selling drugs." *Id.* As officers removed King from the residence, he shouted to people standing across the street, "Watch my house so it doesn't get robbed." JA 146.

Testimony at trial showed that the 1215 Page Street residence was the property of Annessa Buchanan, King's niece. Buchanan rented the residence out, but tenants paid their own utilities. After Buchanan moved to Columbus, her mother, Cathy Nichols (King's sister), took over responsibility for the Page Street house. One tenant was Jackie Weaver, another one of King's sisters, who moved out in 2005. Weaver was unable to move her appliances at the time she moved out, so she asked King to watch her appliances and her dog. Weaver also made arrangements with a subsequent tenant of the 1215 Page Street residence, Benjamin Sayen, that he could use her appliances if the dog could stay in the backyard. When Weaver moved out, King cleaned the house, watched Buchanan's car, checked on Weaver's appliances, and cared for her dog. Although King

never lived at or rented the 1215 Page Street residence and lived with his sister, Cathy Nichols, at 915 Peck from 2002 until his trial, it is undisputed that he visited the Page Street residence on a daily basis.

The most recent tenant was Sayen, who went to jail on December 27, 2005, a month before the search and arrest of King. Sayen was in continuous custody from the time of his arrest until at least the time of King's trial. Employees from Columbia Gas and Toledo Edison testified that Sayen opened utility accounts in his name for the house at 1215 Page Street in December 2005. No payments were ever made on Sayen's utility accounts.

At the close of the Government's proofs, King moved for acquittal due to insufficient evidence on both the felon-in-possession count, 18 U.S.C. § 922(g)(1), and the count for possession with intent to distribute seventeen grams of crack cocaine, 21 U.S.C. § 841(a)(1), (b)(1)(B). The district court denied the motion. King then put on several defense witnesses. At the close of proofs, the district court instructed the jury. The jury subsequently convicted King on both counts.

The probation office prepared a presentence report. Using the 2006 edition of the *Guidelines Manual*, the probation office calculated a base-offense level of twenty six. Two levels were added for possessing a firearm, making the offense level twenty eight. Because King had previously been convicted of aggravated robbery, armed bank robbery, and robbery with firearms, he qualified as an armed career criminal within the meaning of U.S.S.G. § 4B1.4, and the offense level was enhanced to thirty four. King's criminal history placed him in Category VI. The resulting Guidelines range of imprisonment was 262 to 327 months.

King was represented by legal counsel at sentencing. King sought a sentence of 180 months, the mandatory minimum sentence he faced as a result of the felon-in-possession conviction. King argued that given his age, there was a reduced likelihood that he would commit crimes in the future. Moreover, with a sentence of 180 months, he would have hope of leaving prison, thereby promoting the interest of rehabilitation. He also pointed out that he suffered from diabetes. The district court rejected King's arguments, explaining that the defendant was a classic recidivist who had "not learned from his own history," that fifty-seven years old was not such an advanced age to require a sentence below the advisory Guidelines range, and that firearms were involved in a majority of the defendant's prior convictions. JA 195-96. The district court then sentenced King to 264 months in prison on each count, to be served concurrently.

## II

### A. Sufficiency of the Evidence

#### 1. Federal Rule of Civil Procedure 29

In his first claim of error, King argues that the district court abused its discretion in denying his motion for acquittal for insufficient evidence on both the felon-in-possession count and the narcotics count. In his second claim of error, King contends that there was insufficient evidence to convict him of either offense. The second claim, however, is not accompanied by any independent analysis. Because the appellate standard of review of a district court's denial of a motion for acquittal under Federal Rule of Criminal Procedure 29(a) for lack of sufficient evidence is identical

to the standard for an independent appellate claim of insufficient evidence, *United States v. Abner*, 35 F.3d 251, 253 (6th Cir. 1994), we review together King's first and second claims of error.

Rule 29(a) provides, "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." In reviewing King's claim that the district court abused its discretion when it denied his Rule 29 motion, we review his motion de novo and examine the evidence in the light most favorable to the Government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Grubbs*, 506 F.3d 434, 438 (6th Cir. 2007). We can reverse a judgment based on a finding of insufficient evidence only if the judgment is not supported by substantial and competent evidence upon the record as a whole. *Id*. We must make all reasonable inferences and credibility determinations in support of the guilty verdicts. *United States v. Newsom*, 452 F.3d 593, 608 (6th Cir. 2006).

###        2.        Constructive Possession

There are three elements to the offense of being a felon in possession of a firearm: (a) the defendant had a previous felony conviction; (b) the defendant knowingly possessed the firearm specified in the indictment; and (c) the firearm traveled in or affected interstate commerce. 18 U.S.C. § 922(g); *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008). The parties stipulated to the first and third elements—the only element at issue during trial was whether King knowingly possessed the firearm. It is further undisputed that King was not in actual possession of the firearm,

so the claim of error boils down to whether there was sufficient evidence that he constructively possessed the firearm. *Grubbs*, 506 F.3d at 439 (explaining that a felon-in-possession conviction can be sustained by a showing of actual or constructive possession). Possession can be proven by either direct or circumstantial evidence. *Newsom*, 452 F.3d at 609.

As for the narcotics count, there are also three elements for possession with intent to distribute: (a) the defendant knowingly (b) possessed a controlled substance (c) with the intent to distribute. 21 U.S.C. § 841(a)(1), (b)(1)(B). On appeal, King argues that he did not have actual or constructive possession of the narcotics. The Government does not contend that he had actual possession, so this claim also boils down to whether there was sufficient evidence of constructive possession to convict King of the narcotics count.

Constructive possession exists where the defendant "does not have possession but instead knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others." *Campbell*, 549 F.3d at 374 (internal quotation marks omitted). However, "[p]resence alone near a gun . . . does not show the requisite knowledge, power, or intention to exercise control over the gun to prove constructive possession." *United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007) (en banc) (internal citation and quotation marks omitted). "Other incriminating evidence must supplement a defendant's proximity to a firearm in order to tip the scale in favor of constructive possession." *Campbell*, 549 F.3d at 374 (citation omitted). Consequently, "evidence of some other factor—including connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise—coupled with proximity may suffice." *Newsom*, 452 F.3d at 610 (citation omitted). The

evidence need not be overwhelming, in the view of the appellate court, to uphold a jury's finding of guilt. This court has recognized that "the jury could have drawn different inferences from [the government's] evidence, and [the court's] mandate is to affirm when the jury's choice was a *rational* one." *United States v. Mackey*, 249 F. App'x 420, 424 (6th Cir. 2007) (internal quotation marks omitted, emphasis added).

In attacking his felon-in-possession and narcotics convictions, King points to the same evidence or lack thereof to show that there was insufficient evidence of possession. He points out that there was testimony that he was lying face down in the living room when officers entered the residence and that the firearm and drugs were found in an adjoining bedroom. Another person was also in the residence when officers entered. A third person had vacated the residence about a month before the search, and several of the utility bills were still in that person's name. No fingerprints were found on the firearm or the narcotics. King contends that he was at the 1215 Page residence to walk his sister's dogs. He argues that he never exercised dominion or control over the residence, the firearm, or the drugs, and that the Government's evidence of constructive possession was insufficient to show otherwise.

King relies heavily upon this court's decision in *United States v. Beverly*, 750 F.2d 34 (6th Cir. 1984). In that case, the defendant was standing near a trashcan in a kitchen during the execution of a search warrant; the defendant did not live in the residence. *Id.* at 35. The trashcan contained two firearms, one of which had the defendant's fingerprint on it. *Id.* at 35-36. The defendant was convicted of possession of a firearm. This court held that the evidence was insufficient for conviction because there was no evidence that the defendant controlled the kitchen. The court said

that the evidence showed "only that [defendant] was in the kitchen of [a third person's] residence, that [defendant] was standing close to a waste basket which contained two guns, and that [defendant] had at some point touched one of the guns." *Id.* at 37.

This case is distinguishable from *Beverly*. First, one of the witnesses at the scene testified that King told him that the bedroom was his. King went to the residence daily to care for his sister's dog and to check on the appliances. At the time of the search, there was no third person living in the residence. Moreover, King told a detective that he had a narcotic in his coat in the bedroom, and the narcotic was subsequently found there. Also found in the bedroom were prescription drug bottles and an empty box of syringes with King's name on them; a set of keys to the front door of the residence; and a bank deposit slip to King's account. Based on this evidence, a reasonable jury could conclude that King had dominion over the bedroom where the firearm and narcotics were found, unlike the kitchen where the firearms were found in *Beverly*.

In addition, there was evidence that King knew the contents of the bedroom and residence. Again, King admitted that he had a narcotic in his coat pocket and that the coat was in the bedroom. When asked whether there were any more firearms in the residence, King answered "no." These statements proved to be accurate.

Finally, Detective Scoble testified that King told him that King had been selling drugs before the detective had even been in training. The jury could infer from this that King had knowledge of and had participated in past narcotic trafficking activity. Given the evidence of King's proximity to the bedroom, dominion of the room, knowledge of the contents of the residence, and knowledge of and participation in past narcotic distribution, the jury could conclude that King knowingly

possessed the firearm and narcotics.

Although King points to testimony that he did not live at the residence and that another person had been living there a month before the search, evidence of innocence is not enough to overturn a conviction so long as there is enough countervailing evidence of guilt for a jury to choose rationally in favor of that conviction. Here, there was sufficient evidence that King possessed the firearm and narcotics. Accordingly, we reject King's first two claims of error.

**B.      Detective Scoble**

King raises two claims of error with regard to Detective Scoble as a witness. King contends that the district court committed reversible error by designating Detective Scoble as an expert witness in the presence of the jury in violation of this court's directive in *United States v. Johnson*, 488 F.3d 690 (6th Cir. 2007). He further argues that Detective Scoble impermissibly gave his opinion on one of the ultimate questions of fact—whether King possessed the firearm and narcotics. He does not, however, argue that the district court abused its discretion in finding that Detective Scoble was qualified to be an expert witness.[1]

**1.      Designation as an Expert in Front of the Jury**

---

[1]A review of the Detective's background confirms that he was well-qualified to testify about drug investigations and paraphernalia.

Prior to any substantive testimony, the Government posed a series of qualifying and foundational questions to Detective Scoble.  At the conclusion of these questions, the following colloquy occurred:

> MR. WELDON:  Your Honor, at this time I'd move The Court to declare that Detective Brent Scoble is an expert in the field of narcotics investigations and paraphenelia [sic] pursuant to the Federal Rules of Evidence 702.
>
> MR. KING:  I'd like to note an objection, Your Honor.
>
> THE COURT:  I think in the field of investigation and police work connected with that investigation --
>
> MR. WELDON:  Thank you, Your Honor.
>
> THE COURT:  -- the Court will treat him as an expert over the objection of defendant.
>
> MR. WELDON:  Thank you, Your Honor.

JA 114-15.  While King did not specify whether he was objecting to Detective Scoble as an expert witness or, rather, whether he was objecting to the Government's request to so designate the detective in open court, the Government does not contest that King preserved his claim for appeal.

In *Johnson*, this court stated that district courts should not designate a police officer as an "expert" before the jury. 488 F.3d at 697.  The court explained:

> When a court certifies that a witness is an expert, it lends a note of approval to the witness that inordinately enhances the witness's stature and detracts from the court's neutrality and detachment.  "Except in ruling on an objection, the court should not, in the presence of the jury, declare that a witness is qualified as an expert or to render an expert opinion, and counsel should not ask the court to do so." *ABA Civil Trial Practice Standard 17* (Feb. 1998); *see also* Jones, Rosen, Wegner & Jones, Rutter Group Practice Guide: Federal Civil Trials & Evidence § 8:1548.1 (The Rutter Group 2006).  Instead, the proponent of the witness should pose qualifying and foundational questions and proceed to elicit opinion testimony.  If the opponent objects, the court

should rule on the objection, allowing the objector to pose *voir dire* questions to the witness's qualifications if necessary and requested. *See Berry v. McDermid Transp., Inc.*, 2005 WL 2147946, at *4 (S.D. Ind. Aug.1 , 2005) (stating that "counsel for both parties should know before trial that the court does not 'certify' or declare witnesses to be 'experts' when 'tendered' as such at trial. Instead, if there is an objection to an offered opinion, the court will consider the objection. The court's jury instructions will refer to 'opinion witnesses' rather than 'expert witnesses'"); *see also Jordan v. Bishop,* 2003 WL 1562747, at *2 (S.D. Ind. Feb. 14, 2003). The court should then rule on the objection, "to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means." Fed. R. Evid. 103(c).

*Id.* at 697-98.

King has not argued that the district court committed a structural error requiring automatic reversal. As the Supreme Court set forth in *Brecht v. Abrahamson*, "Trial error occurs during the presentation of the case to the jury, and is amenable to harmless-error analysis because it may be quantitatively assessed in the context of other evidence presented in order to determine the effect it had on the trial." 507 U.S. 619, 629 (1993) (internal quotation marks, citations, and brackets omitted). The Court went on to explain, "At the other end of the spectrum of constitutional errors lie structural defects in the constitution of the trial mechanism . . . . The existence of such defects . . . requires automatic reversal of the conviction because they infect the entire trial process." *Id.* at 629-30 (internal quotation marks, citations, and footnote omitted). The *Johnson* court did not consider the district court's statement in open court as a structural error because it subjected the statement to plain-error analysis and affirmed the conviction. 488 F.3d at 698. Likewise, in the two decisions cited in *Johnson* for support of the general proposition, neither of the courts found the trial court's action mandated reversal. *See id.* at 697 (citing *United States v. Bartley*, 855 F.2d 547, 552 (8th Cir. 1988); *State v. McKinney*, 917 P.2d 1214, 1233 (Ariz. 1996)). Because the district court's

designation of the detective as an expert can be meaningfully reviewed against the properly admitted evidence and instructions of the district court, we review King's claim for harmless error.

"The harmless-error standard provides that if 'one cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.'" *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 409-10 (6th Cir. 2006) (quoting *DePew v. Anderson*, 311 F.3d 742, 751 (6th Cir. 2002)). It would have been the better practice for the district court to have refrained from declaring Detective Scoble an expert in front of the jury, a procedure that this court expressly cautioned against in *Johnson*. However, *Johnson* had not yet been issued. King's trial occurred in November 2006, several months before this court issued *Johnson* (May 2007). Moreover, at the time of trial, this court's own pattern jury instructions provided, "(1) You have heard the testimony of _____, an *expert* witness. An *expert* witness has special knowledge or experience that allows the witness to give an opinion. (2) You do not have to accept an *expert's* opinion. . . ." 6th Cir. Pattern Crim. Jury Instr. 7.03 Expert Testimony (2005) (emphasis added). The instruction was amended in December 2007 to reflect the *Johnson* court's disfavor of the use of "expert" in open court. *See* 6th Cir. Comm., cmt. to Instr. 7.03 (2008 update). The current model instruction omits the term "expert." *See* 6th Cir. Pattern Crim. Jury Inst. 7.03 Opinion Testimony (2008 update); *United States v. Neeley*, 308 F. App'x 870, 877 n.4 (6th Cir. 2009).

The district court's designation was not pervasive, but rather an isolated statement. The primary issue at trial was whether King possessed the firearm and narcotics and, while Detective Scoble did offer fact testimony on that issue, there were a number of other Government witnesses

who also testified on that very issue. Thus, even if, as King contends, the district court's declaration lent a note of approval to Detective Scoble's testimony, there was considerable corroborating direct and circumstantial evidence from other sources on the crucial issue of possession. Without more, it cannot be said that the jury was substantially swayed by the district court's declaration and, accordingly, any error by the district court was harmless.

###    2.    Testimony Regarding Possession

King maintains that the district court plainly erred in permitting Detective Scoble to state his opinion that King "possessed" the items, an ultimate finding of fact to be left to the jury. *United States v. Swafford*, 385 F.3d 1026, 1029-30 (6th Cir. 2004). During cross-examination, King asked Detective Scoble several times whether anyone told the detective that "King was in possession" of the firearm or narcotics. Detective Scoble answered that although no one told him that the items were on King's "specific person," the detective did write in his supplemental report that King "possessed" them. JA 130. After further questioning on the topic by King, Detective Scoble clarified, "As I stated before, none of these items other than the money was on your specific person, but all these items were in your bedroom along with your belongings with your personal name on it." JA 131.

The district court did not plainly err by failing to strike sua sponte the detective's testimony. While the question of possession was one of the ultimate factual elements for the jury to answer, it is clear from the transcript that Detective Scoble's testimony on possession was in response to King's questions. King can hardly now complain about testimony he directly elicited. Detective

Scoble clarified what he meant by the term "possess," i.e., that the firearm and narcotics were in the bedroom along with other items that belonged to King. Thus, the jury was not misled by any unstated and possibly erroneous legal standard packed into the detective's use of the term "possess." *See United States v. Ahmed*, 472 F.3d 427, 434 (6th Cir. 2006) (finding that in a close case, a witness's use of the term "falsity" did not convey a legal opinion, but rather was simply "a non-technical expression of her informed opinion"). Thus, we reject King's third claim of error and affirm his convictions.

**C.     The Reasonableness of King's Sentence**

Lastly, King argues that his sentence was unreasonable. He raises three specific grounds for a lesser sentence: (1) the evidence at trial was insufficient to show that he possessed the firearm or narcotics; (2) the district court failed to give proper weight to King's age at the time of sentencing; and (3) the district court was under the mistaken understanding that the Guidelines were mandatory.

We review the district court's sentencing judgments under the deferential "abuse of discretion" standard, evaluating both their procedural and substantive reasonableness. *Gall v. United States*, 128 S. Ct. 586, 591, 598 (2007). A district court will be deemed to have abused its discretion if it committed significant procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.* at 597. "If procedurally sound, [the court] then review[s] the sentence for substantive reasonableness

- 15 -

under an abuse-of-discretion standard." *United States v. Haj-Hamed*, 549 F.3d 1020, 1024 (6th Cir. 2008) (citing *Gall*, 128 S. Ct. at 598; *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007)). "[A] properly calculated within-Guidelines sentence will be afforded a rebuttable presumption of reasonableness on appeal." *Id.* at 1025 (citing *Rita*, 127 S. Ct. at 2462; *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006)).

King does not contend that the district court erred in calculating the Guidelines range. A review of the district court's calculations confirms that it properly calculated a range of 262 to 327 months. The district court sentenced King to 264 months, so the sentence is afforded a presumption of reasonableness. The issue becomes, then, whether King has identified sufficient errors to rebut the presumption.

King's first and third asserted errors require little discussion. The jury found that King possessed the firearms and narcotics beyond a reasonable doubt, and the district court was bound by the jury's findings. *Cf. United States v. Garner*, 491 F.3d 532, 536-37 (6th Cir. 2007), *cert. denied*, 128 S. Ct. 1103 (2008). Furthermore, the district court clearly understood that the Guidelines are advisory, as evidenced by the very statements that King relies upon for the contrary inference: "The advisory guideline is 262 to 327 months. And I will sentence within that guideline."

As to the second asserted error, the district court did not abuse its discretion in rejecting King's age as a basis for sentencing below the advisory Guidelines range. Under the Guidelines, a defendant's age "is not ordinarily relevant in determining whether a departure is warranted." U.S.S.G. § 5H1.1 (2006). It is true that a district court "has a freer hand to account for the defendant's age in its sentencing calculus under § 3553(a)" than under the Guidelines. *United States*

v. *Davis*, 537 F.3d 611, 617 (6th Cir.) (citing *United States v. Smith*, 445 F.3d 1, 5 (1st Cir. 2006)), *cert. denied*, 129 S. Ct. 752 (2008); *see also Haj-Hamed*, 549 F.3d at 1027 ("It is correct that, post-*Booker,* a district court may vary a sentence to account for a factor discouraged by the Sentencing Commission." (internal quotation marks omitted)). Yet, "[t]o say that a district court *may* account for a defendant's age at sentencing, however, is not to say" that a large downward variance is necessarily warranted. *Davis*, 537 F.3d at 617 (emphasis added).

During the sentencing hearing, the district court noted that King's extensive criminal history showed that King had failed to learn from his own criminal history, let alone the history of others. The district court also noted that King was several years younger than the judge and did not view the defendant's age as a reason to sentence below the Guidelines. The district court clearly placed considerable emphasis on the need to protect society from King because several of his convictions (including the present one) involved firearms. Although King argues that the district court did not give adequate weight to his age, he has simply failed to show that the district court erred by placing greater emphasis on the risk of recidivism and on the threat that King posed to society than on his age.

### III

For the reasons set forth above, we **AFFIRM** King's convictions and sentence.