NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0307n.06

Case No. 23-3444

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 16, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff - Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| JAMES MAJORS, | ) | |
| Defendant - Appellant. | ) | OPINION |
| | ) | |
| | ) | |

Before:  GIBBONS, KETHLEDGE, and DAVIS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge.  James Majors appeals his conviction for trafficking drugs and carrying a firearm, arguing that prosecutors intentionally prejudiced the jury and that the district court improperly admitted the government's expert testimony.  He also appeals his sentence, arguing that the district court violated his due process rights when calculating his criminal history score.  Finding no reversible misconduct or error, we affirm.

I.

In late 2021, investigators with the Drug Enforcement Administration ("DEA") received a tip from a confidential informant that James Majors was trafficking drugs out of his garage in Cleveland, Ohio.  Investigators recruited the informant to conduct a controlled buy, and Majors sold the informant a small quantity of methamphetamine for $350.  Investigators then surveilled Majors's address, observing several individuals arrive at the property, enter Majors's garage, and depart within a matter of minutes.  Based on this information, the DEA obtained a search warrant

for Majors's residence, and in January 2022, a search of Majors's garage produced numerous items consistent with drug trafficking, including powder cocaine, electronic scales, a Pyrex glass, and Ziploc bags. Although investigators interviewed several individuals at Majors's address, Majors was not present on the day of the search.

A few weeks later, Cleveland Division of Police officers Xavier Quinones and Haleigh Shingary were on patrol a short distance from Majors's home. Two individuals flagged the officers down and informed them that someone — an individual whom police later identified as Majors — was sitting unconscious in his car in a nearby cemetery. The officers located Majors's vehicle, and as they approached, they observed Majors slumped over the steering wheel, with the engine running and a full glass of wine sitting on the dashboard. After rousing him, officers removed Majors from his vehicle and patted him down, uncovering a loaded .22 Magnum handgun in his right jacket pocket. A subsequent search of Majors's vehicle produced a second loaded firearm and numerous small bags containing crack cocaine, methamphetamine, and a heroin/fentanyl mixture. Many of these bags, police found, were stowed in secret compartments inside a lint roller and an aerosol can. Police then took Majors into custody.

Come March 2022, a federal grand jury indicted Majors on six counts — two[1] stemming from the evidence found in his garage and four stemming from the evidence recovered from his person and vehicle during the January 2022 cemetery search. As relevant to Majors's appeal, the latter four counts included three for possession of fentanyl, cocaine base, and methamphetamine with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and a fourth for using or carrying a firearm during and in relation to drug trafficking, in violation of 18 U.S.C.

---

[1] Related to the evidence recovered from his garage, Majors was charged with possession of cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(2).

§ 924(c)(1)(A)(i). Majors was not charged for the controlled buy that preceded the search of his residence.

At trial, the government introduced testimony from DEA Task Force Officer Jose Alcantara, the case agent assigned to the DEA's investigation of Majors. After a handful of foundational questions establishing Alcantara's experience and qualifications, the prosecutor moved the district court, in the presence of the jury, to have Alcantara "be declared an expert in the field of drug trafficking." DE 77, Trial Tr. Vol. II, Page ID 737. The district court responded, "[y]ou may proceed," and it overruled defense counsel's simultaneous objection. *Id.* at 737–38. Alcantara then testified as a fact and opinion witness, recounting the information that the DEA received from its confidential informant, describing the circumstances of both the 2021 controlled buy and the DEA's subsequent surveillance, and opining as to the significance — vis-à-vis drug traffickers' *modus operandi* — of Majors's possession of two firearms. The government also introduced testimony from DEA Task Force Officer Robert Sauterer, who assisted Alcantara in his investigation and further testified to the circumstances leading up to the 2021 controlled buy. Majors repeatedly objected to the testimony of both officers.

Following a three-day trial, the jury convicted Majors of the four counts arising from the January 2022 search of his vehicle and acquitted him of the two remaining counts. At sentencing, the district court sentenced Majors to 138 months' imprisonment — 78 months on the three counts of possession with intent to distribute and 60 months for carrying a firearm during and in relation to drug trafficking. The district court added two points to his criminal history score for committing the offenses while under a criminal justice sentence, pursuant to U.S.S.G. § 4A1.1(d) (2018), based on its finding that Majors remained on probation for a 2015 OVI (operating a vehicle while intoxicated) conviction when he was arrested in January 2022.

Majors timely appealed his conviction and his sentence. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

II.

We begin with Majors's challenges to his conviction.

A.

Majors first complains that the government's request, in the presence of the jury, to have DEA Task Force Officer Alcantara "declared an expert in the field of drug trafficking" amounted to prosecutorial misconduct. DE 77, Trial Tr. Vol. II, Page ID 737. Relatedly, Majors argues that the trial court erred by impliedly granting the government's request. It is not immediately clear from the record whether Majors's contemporaneous objection at trial concerned the government's request or the district court's supposed acquiescence to it (or both), but the government does not contest that Majors preserved the two claims for appeal. Thus, we review the former claim de novo, *see United States v. Henry*, 545 F.3d 367, 376 (6th Cir. 2008), and the latter claim for harmless error, *see Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 409 (6th Cir. 2006); *United States v. King*, 339 F. App'x 604, 611 (6th Cir. 2009).

The government concedes that the prosecutor's request to certify Alcantara as an expert in front of the jury was improper, so to decide whether the request amounted to prosecutorial misconduct, we need only ask whether it was so "flagrant" that only a retrial could correct the impropriety. *See United States v. Crumpton*, 824 F.3d 593, 618–19 (6th Cir. 2016) (noting that the court analyzes claims of prosecutorial misconduct by "determining whether the prosecutor's statements were both improper and flagrant" (quoting *United States v. Davis*, 514 F.3d 596, 613 (6th Cir. 2008)) (alterations omitted)). To that end, we consider: "(1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the

remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant." *Id.* (quoting *Davis*, 514 F.3d at 613).

Three of these factors weigh in the government's favor. First, the result of the trial cuts against a finding of prejudice to Majors. Our chief concern when a prosecutor asks the district court to certify the government's witness as an expert is that the prosecutor thereby exalts the witness's testimony to unimpeachable status in the minds of the jurors. *Cf. United States v. Johnson*, 488 F.3d 690, 697–98 (6th Cir. 2007) ("When a court certifies that a witness is an expert, it lends a note of approval to the witness that inordinately enhances the witness's stature."). Here, it is clear from the verdict that the jury did not unthinkingly accept what Alcantara had to say. Alcantara opined at length that the evidence recovered from Majors's residence bore the hallmarks of drug manufacturing and trafficking. Nevertheless, the jury acquitted Majors of the two counts stemming from the evidence found in his garage. In light of this result, we think it unlikely that the prosecutor's request improperly influenced the jury or prejudiced Majors's defense. *See United States v. Young*, 470 U.S. 1, 18 n.15 (1985) (defendant's partial acquittal "reinforce[d] [the Court's] conclusion that the prosecutor's remarks did not undermine the jury's ability to view the evidence independently and fairly"); *see also United States v. Darden*, 688 F.3d 382, 391 (8th Cir. 2012) (partial acquittal "suggests that the challenged remarks did not prevent the jurors from viewing the evidence fairly and maintaining the burden of proof on the government").

The second and fourth factors weigh in the government's favor as well. The prosecutor made her improper request only once, and the government did not refer to Alcantara as an expert elsewhere during his testimony or in its closing and rebuttal arguments. *Cf. Crumpton*, 824 F.3d at 619. Meanwhile, the evidence against Majors was substantial. Majors admitted possessing both

the crack cocaine and the heroin/fentanyl mixture that police found hidden inside the secret compartment of an aerosol can. He denied possessing the methamphetamine, but it too was found inside his car in the secret compartment of a lint roller, so the jury's conclusion that Majors possessed it flowed immediately from the surrounding circumstances. Majors also admitted possessing the two loaded firearms. And the circumstantial evidence indicating that Majors intended to distribute the drugs he possessed was strong. *See United States v. Mackey*, 265 F.3d 457, 460 (6th Cir. 2001) (noting that "circumstantial evidence alone can be sufficient to sustain a conviction" for possession with intent to distribute). Majors's vehicle contained several items consistent with drug distribution, including a scale, several cellphones, and numerous small plastic baggies. *Cf. United States v. Balogun*, 463 F. App'x 476, 485 (6th Cir. 2012) (presence of scales and small bags supported inference that defendant intended to distribute drugs). Two Government witnesses other than Alcantara stated that these items were indicative of not just drug use, but drug distribution. What is more, Majors admitted that he had distributed drugs to others in the past, evidencing his potential intent to do so in the present. *See* Fed. R. Evid. 404(b)(2) (prior act evidence admissible to show intent); *see also United States v. Hardy*, 643 F.3d 143, 150–51 (6th Cir. 2011).

Only the third factor fails to support the government, as it is unclear whether the prosecutor's request was an intentional effort to unduly influence the jury or merely a one-off mistake. But by the same token, this factor's neutrality does not counsel a finding of prosecutorial misconduct.

All told, the record fails to show that the prosecutor's request was flagrant. We have said that "[w]e will not overturn a verdict unless the prosecutorial misconduct is so pronounced and persistent that it permeate[d] the entire atmosphere of the trial, . . . or [was] so gross as probably

to prejudice the defendant." *Davis*, 514 F.3d at 614 (internal quotation marks omitted). Here, we can reach no such conclusion. Because the prosecutor's request to certify Alcantara as an expert was an isolated incident with no discernible effect on the outcome of the trial, and because the government presented substantial evidence indicative of Majors's guilt, we find that the prosecutor's request, while improper, does not warrant upsetting the jury's verdict. *See id.*

For overlapping reasons, we find that the district court's supposed acquiescence to the prosecutor's request also fails to merit a new trial. When the government asked the district court to certify Alcantara as an expert, the court replied, "[y]ou may proceed." DE 77, Trial Tr. Vol. II, Page ID 737. Defense counsel then protested, and the district court overruled his objection. (***Id.***)

We confronted a similar exchange in *United States v. Trepanier*, 576 F. App'x 531 (6th Cir. 2014). There, the government asked the court, in the presence of the jury, to "recognize [its witness] as an expert in computer forensic examinations." *Id.* at 536. Defense counsel did not object, and the court replied, "[h]e will be." *Id.* The defendant later complained that the court's remark had "improper[ly] endorse[d] . . . the government's witness," requiring reversal of his guilty verdict. *Id.* In upholding the verdict, we noted that, "when a witness is tendered to give opinion testimony under Fed. R. Evid. 702," the ideal practice "is for the court to avoid declaring or certifying the witness as an 'expert.'" *Id.* (citing *Johnson*, 488 F.3d at 697–98 and *King*, 339 F. App'x at 610–11). And because the district court's statement had not explicitly "declare[d]" or "certif[ied]" the government's witness as an expert, we concluded that its "simple three-word response to the government's unopposed request . . . was relatively innocuous." *Id.* So, notwithstanding that the court's comment "identifi[ed] . . . the government's witness as an expert," we declined to set the defendant's conviction aside. *Id.*

The same logic applies here. The district court did not certify or endorse Alcantara as an expert, and its "simple three-word response," though it allowed the prosecutor to continue, did nothing to inflate Alcantara's credibility in front of the jury. *See id.* Majors attempts to distinguish *Trepanier* by noting that defense counsel there did not object to the government's request, meaning that we reviewed the district court's purportedly improper response only for plain error. But the harmless error standard that applies here makes no difference. Under that standard, we reverse if we "cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the error." *King*, 339 F. App'x at 611 (quoting *Mike's Train House*, 472 F.3d at 409–10). In light of our earlier discussion of the prosecutor's request, however, we can confidently say that the jury's verdict was not "substantially swayed" by the trial court's statement. *See id.* In fact, given Majors's partial acquittal, we detect little, if any, evidence that the jury's verdict was improperly swayed at all. Accordingly, "[w]e are not persuaded that [Majors]'s substantial rights were prejudiced or that the fairness of the trial was compromised," and we decline to set the jury's verdict aside based on the court's response to the prosecutor's request. *See Trepanier*, 576 F. App'x at 536.

B.

Majors's remaining three challenges to his conviction also fall short. First, setting aside the government's improper request to certify Alcantara as an expert, the district court did not, as a matter of substance, abuse its discretion when admitting officer Alcantara's opinion testimony. *See United States v. Harris*, 192 F.3d 580, 588 (6th Cir. 1999) (admission of expert testimony under Fed. R. Evid. 702 reviewed for an abuse of discretion). Majors argues that Alcantara's opinions were not helpful to the jury because he merely "parade[d] the generalized association between firearms and drug trafficking to a position of 'undue prominence in the minds of [the]

jurors[.]'" CA6 R. 25, Appellant Br., at 21 (quoting *United States v. Thomas*, 99 F. App'x 665, 669 (6th Cir. 2004)). But we have "routinely allow[ed] qualified law enforcement officials to testify that circumstances are consistent with drug distribution rather than personal use." *United States v. Ham*, 628 F.3d 801, 805 (6th Cir. 2011). This includes a historically permissive approach towards law enforcement testimony explaining the close connection between firearm possession and drug trafficking. *See United States v. Maya*, 966 F.3d 493, 505 (6th Cir. 2020) (not an abuse of discretion to allow DEA agent testimony that proximity of firearm to drug proceeds was "consistent with the firearm being used to protect the funds"); *United States v. Swafford*, 385 F.3d 1026, 1030 (6th Cir. 2004) (not plain error to allow DEA agent "to testify that firearms play a role in drug trafficking activity"); *United States v. Hornbeak*, 575 F. App'x 618, 621 (6th Cir. 2014) (not an abuse of discretion to allow ATF agent testimony that firearms and drug trafficking go "hand in hand"). Majors makes no effort to undercut Alcantara's experience or qualifications, and in light of our many recent endorsements of similar testimony, we cannot say that the district abused its discretion in allowing his opinions to go before the jury. *See Maya*, 966 F.3d at 505 (admission of evidence not an abuse of discretion unless the court is "left with the definite and firm conviction that the district court committed a clear error of judgment").

Nor did the district court err when it allowed officers Alcantara and Sauterer to testify as to the origins of the DEA's investigation, including the 2021 controlled buy.[2] Majors contends that the officers' testimony violated his rights under the Sixth Amendment's Confrontation Clause because the officers testified to out-of-court statements made by the DEA's confidential informant. But the specific testimony that Majors challenges was either not testimonial or not hearsay, and its

---

[2] While we ordinarily review the district court's evidentiary rulings for abuse of discretion, we review preserved challenges under the Confrontation Clause de novo. *United States v. Warman*, 578 F.3d 320, 345 (6th Cir. 2009).

admission did not violate Majors's constitutional rights. *See United States v. Pugh*, 405 F.3d 390, 399 (6th Cir. 2005).

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. AMEND. VI. Interpreting this language in *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held "that testimonial, out-of-court statements offered against the accused to establish the truth of the matter asserted may only be admitted where the declarant is unavailable and where the defendant has had a prior opportunity to cross-examine the declarant." *United States v. Cromer*, 389 F.3d 662, 671 (6th Cir. 2004) (citing *Crawford*, 541 U.S. at 60, 68). We have made clear in our caselaw applying *Crawford* that "statements by a confidential informant are testimonial and thus are subject to the dictates of the Confrontation Clause." *Id.* at 675. But we have further made clear that "[t]he admission of a testimonial statement in and of itself is not enough to trigger a violation of the Confrontation Clause," and that "[i]nstead, the [challenged] statement must be used as hearsay" — that is, the statement "must be offered for the truth of the matter asserted." *Pugh*, 405 F.3d at 399.

Under these principles, neither of the two categories of testimony that Majors challenges violated his Confrontation Clause rights. In the officers' testimony regarding the 2021 controlled purchase of methamphetamine, officers Alcantara and Sauterer described two things: (1) preparing the confidential informant for the controlled purchase and (2) the controlled purchase itself. Both officers participated in the former act, and both witnessed the latter. In other words, the officers' testimony was based on firsthand experience, and their recollections "did not even put before the jury any statements made by the [confidential informant]." *Cromer*, 389 F.3d at 676. Absent the introduction of any out-of-court assertions, this element of the officers' testimony

could not have violated Majors's Confrontation Clause rights. *Id.*; *see also United States v. Whiteside*, 747 F. App'x 387, 398 (6th Cir. 2018) (no Confrontation Clause violation where "[n]othing indicate[d] that [the officer's] testimony was based on an out-of-court assertion, rather than knowledge that [the officer] had obtained in the investigation.").

The second portion of challenged testimony was equally inoffensive to Majors's Confrontation Clause rights, but for a different reason. Twice during direct examination, Officer Alcantara testified to the substance of the informant's tip, which alleged that Majors was trafficking drugs from his garage. Majors complains that this testimony violated his right to confront his accuser, and to be sure, the informant's tip was testimonial in nature. *Cromer*, 389 F.3d at 671. But the government did not introduce the informant's tip for the truth of the matter asserted therein. Instead, the government introduced the tip for its impact on the listener — that is, to explain why investigators targeted Majors and why, in turn, they sought a search warrant for Majors's address.[3] Thus, Alcantara's testimony describing the tip "was provided merely by way of background," helping to explain "how certain events came to pass [and] why the officers took the actions they did." *Cromer*, 389 F.3d at 676; *see also United States v. Gibbs*, 506 F.3d 479, 486 (6th Cir. 2007) (in prosecution for firearm possession, out-of-court statement alleging that the defendant stored firearms in his bedroom was not hearsay but instead merely background evidence "to show why [the defendant]'s bedroom was searched"). Proffered for that purpose, the informant's tip was not hearsay, and Alcantara's testimony did not run afoul of Majors's Confrontation Clause rights. *Cf. United States v. Davis*, 577 F.3d 660, 670 (6th Cir. 2009) (no

---

[3]     That the government did not reference the informant's tip or the information investigators learned from the informant during its closing and rebuttal arguments buttresses this conclusion. *Cf. Cromer*, 389 F.3d at 676 n.10.

Confrontation Clause violation where out-of-court assertions were offered "only as background for [the officer]'s investigation").

Finally, Majors's contention that the cumulative effect of multiple errors should lead to vacatur of his conviction fails as well. As detailed above, we see no error in the district court's individual rulings at trial; accordingly, Majors's cumulative-error claim lacks any support. *See United States v. Deitz*, 577 F.3d 672, 697 (6th Cir. 2009) ("[C]umulative-error analysis is not relevant where no individual ruling was erroneous.")

III.

We turn to Majors's appeal of his sentence. Consistent with the presentence report's recommendation, the district court added two points to Majors's criminal history score for committing the instant offenses while under a criminal justice sentence. *See* U.S.S.G. § 4A1.1(d) (2018). This enhancement, which stemmed from Majors's 2015 conviction for Operating a Vehicle while Intoxicated, elevated Majors's criminal history category from II to III, extending the top of Majors's Guideline range by seven months.

Although he concedes that he was on probation when he committed the instant offenses, Majors argues that the enhancement and the resulting increase to his sentence[4] violated his Due Process and Equal Protection Clause rights. In support, he claims that he remained on probation only because he failed to pay court-ordered restitution, fines, and costs — a failure that stemmed from his inability, as opposed to refusal, to pay. By applying the § 4A1.1(d) enhancement, Majors argues, the district court extended his sentence solely because of his indigency, a result that he claims contravenes the Supreme Court's admonition in *Bearden v. Geogia*, 461 U.S. 660 (1983), that it is "fundamentally unfair" to revoke probation and thereby incarcerate a defendant based

---

[4]    The district court sentenced Majors at the top of his 63 to 78-month Guideline range.

only upon the defendant's inability to pay a fine or restitution. *Id.* at 668. As evidence that we can transpose *Bearden*'s logic to the sentencing-enhancement context, Majors cites *United States v. Parks*, 89 F.3d 570 (9th Cir. 1996), where the Ninth Circuit found that under *Bearden*, a § 4A1.1(d) enhancement premised upon the defendant's ongoing state-court sentence of Legal Financial Obligation (LFO) violated the defendant's Due Process rights. *Id.* at 572–73.

Under plain-error review,[5] we think this argument comes up short. In *Bearden*, the Supreme Court was concerned with the Fourteenth Amendment's requirement of fundamental

---

[5]    Generally speaking, we review a district court's calculation of the defendant's criminal history category, including its application of a § 4A1.1(d) enhancement, de novo. *United States v. Greer*, 872 F.3d 790, 794 (6th Cir. 2017) ("We review de novo the district court's interpretation and legal application of the Guidelines."). However, where the defendant fails to object to a sentencing enhancement before the district court, plain error review applies. *United States v. Nicolescu*, 17 F.4th 706, 730 (6th Cir. 2021). This is equally true where the defendant objects to the enhancement on different grounds than he raised below, *United States v. Webster*, 615 F. App'x 362, 364 (6th Cir. 2015) (citing *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004) and *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc)), or where his objection was insufficiently precise to apprise the district court of its "true basis," *Bostic*, 371 F.3d at 871.

In his sentencing memorandum, Majors argued that his "six year old OVI conviction should NOT count in the calculations [sic] of his criminal history because it was a financial issue which prolonged his 'probation' and said 'probation' was terminated soon after the nature of the 'violation' was discovered." DE 66, Sentencing Mem., Page ID 381 (emphasis omitted). He did not cite any legal authority in support of this argument. During the sentencing hearing, Majors's counsel repeated this objection, stating,

> [M]y objections which includes [sic] a six-year-old OVI conviction which was truly a financial situation. [Majors] did not have the money to pay the fine, I believe, which was involved, or his court costs, and his probation was extended outside of [Majors's] knowledge, which brought him into the time period which would allow for that to be counted for Criminal History Category.

DE 74, Sentencing Tr., Page ID 414–15. Again, Majors's counsel did not cite any legal authority in support of his argument.

We discern from the sentencing transcript that the district court understood Majors's counsel as arguing that Majors's Criminal History Category overrepresented his criminal history. This was a fair interpretation of Majors's contentions, and Majors's counsel made no effort to clarify the grounds on which he objected or to correct the district court's understanding. Accordingly, we find that Majors failed to raise his current objection below and that plain error review applies. *See Bostic*, 371 F.3d at 871; *Vonner*, 516 F.3d at 386.

fairness among criminal defendants. *Bearden*, 461 U.S. at 673. There, the defendant was sentenced to probation, with an accompanying fine and restitution obligation, in lieu of incarceration. *Id.* at 662. The Court found that this sentence "reflect[ed] a determination by the sentencing court that the State's penological interests d[id] not require imprisonment." *Id.* at 670. Accordingly, the Court explained, it was "fundamentally unfair" for the sentencing court to later "automatically" revoke that probation and incarcerate the probationer based solely on his failure to pay his financial obligations. *Id.* at 668. This was so because without inquiring into whether the probationer's non-payment was willful, the sentencing court risked painting with too broad a brush, punishing probationers who "made all reasonable efforts to pay the fine or restitution" alongside probationers who simply chose not to pay. *Id.* The former, the Court went on, possess "a substantial reason which justifies or mitigates" their probation violation, whereas the latter demonstrate "an insufficient concern for paying the debt [they] owe[] to society[.]" *Id.* at 668–69 (alterations omitted in first quote). If the sentencing court were allowed to automatically revoke probation irrespective of this distinction, it would risk "depriv[ing] . . . probationer[s] of [their] conditional freedom" based solely on their indigency, a result that would contravene "the fundamental fairness required by the Fourteenth Amendment." *Id.* at 672–73. To avoid this inequitable outcome, the Court concluded that "in revocation proceedings for failure to pay a fine or restitution," the Fourteenth Amendment requires that the sentencing court "inquire into the reasons for the failure to pay." *Id.* at 672.

Notwithstanding that the Ninth Circuit extended this reasoning to strike down a § 4A1.1(d) enhancement in *Parks*, we think that *Bearden*'s logic does not apply in the current context, for two

reasons.[6] First, the proximate cause of Majors's incarceration in this case is not his failure to pay financial obligations arising from his 2015 conviction; instead, it is his possession of three varieties of illicit drugs with the intent to distribute them and his concomitant carrying of a firearm. So unlike *Bearden*, the triggering event for Majors's incarceration bears no relation to his indigency, nor even his failure to pay a fine or restitution. We thus do not address, as the Supreme Court did, a scenario where the district court imprisoned the defendant "solely because of his lack of financial resources." *Bearden*, 461 U.S. at 661.

Second, and most importantly, the *Bearden* Court's concern with fundamental fairness among defendants is not implicated by the district court's application of the § 4A1.1(d) enhancement. The salient fact when applying a § 4A1.1(d) enhancement, insofar as the enhancement aims to approximate the defendant's culpability, is that the defendant committed his crime in full view of his ongoing punishment for a prior conviction. That is to say, a § 4A1.1(d) enhancement punishes the defendant based on the Sentencing Commission's judgment — and, ultimately, the judgment of the district court — that a defendant who commits a crime while still subject to a penalty for a prior offense displays a greater moral culpability and unwillingness to conform his conduct to social norms than a defendant who commits the same crime without a similar criminal history. *See* U.S.S.G. Ch. 4, Part A (introductory cmt.) ("A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment. General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence.")

---

[6] We note, of course, that *Parks* is not binding on us or on the district court. *See Barker v. Goodrich*, 649 F.3d 428, 436 (6th Cir. 2011).

The nature of the defendant's ongoing criminal justice sentence — i.e., whether it continues by virtue of the defendant's indigency or some other reason — does not factor into this judgment. Why? Because both the indigent defendant and the defendant who willingly refuses to pay are equally capable of conforming their *current conduct* to the requirements of the law. It is not, therefore, "fundamentally unfair" to punish those two defendants on the same terms, even if one was subject to an ongoing criminal justice sentence by virtue of his indigency. As the Supreme Court stated in *Bearden* itself, "[a] defendant's poverty in no way immunizes him from punishment." 461 U.S. at 669. Because the indigent and non-indigent defendant can equally understand what it means to be on probation, both can be held responsible for committing a new offense while under that ongoing criminal justice sentence.

Yet even if we are wrong and the Ninth Circuit is correct, the plain error standard of review saves the district court's judgment. The foregoing discussion demonstrates that whether *Bearden* — which all parties agree does not directly control — ought to apply when the district court contemplates a § 4A1.1(d) enhancement is far from obvious. It cannot, therefore, have been plain error for the district court to fail to apply *Bearden* in this case. *See United States v. Potts*, 947 F.3d 357, 367 (6th Cir. 2020) ("For an error to be plain, it must be clear and obvious — which it cannot be if it involves a question of first impression in this Circuit[.]"); *see also United States v. Melton*, 233 F. App'x 545, 547 (6th Cir. 2007) (district court's application of sentencing enhancement not plain error where issue was one of first impression). Accordingly, Majors's sentence stands.

IV.

For the foregoing reasons, we affirm Majors's conviction and sentence.

- 16 -